471 So.2d 1322 (1985)
CLUB EDEN ROC, INC., Appellant,
v.
TRIPMASTERS, INC., Tripmasters Travel, Inc., and Neil Rothenberg, Appellees.
No. 84-1705.
District Court of Appeal of Florida, Third District.
June 18, 1985.
Rehearing Denied July 24, 1985.
*1323 Simon, Schindler & Hurst and Roger Schindler and Thomas Pflaum, Miami, for appellant.
Horton, Perse & Ginsberg and Mallory Horton, Miami, for appellees.
Before NESBITT, DANIEL S. PEARSON, and FERGUSON, JJ.
PER CURIAM.
Plaintiff/counter-defendant, Club Eden Roc, Inc., appeals from a final judgment entered after a non-jury trial, finding it liable on a counterclaim to defendants/counter-plaintiffs, Tripmasters, Inc. and Tripmasters Travel, Inc. ("Tripmasters"), for breach of a five-year lease agreement.
The main issue in this multi-faceted dispute is whether the parties entered into a five-year contract. A second question is whether Tripmasters proved that its goodwill and reputation had been damaged.
Tripmasters, a tour operator, specializes in conducting Passover tours to selected hotels. Club Eden Roc, Inc. (the "hotel"), owners of the Eden Roc Hotel, hosted Tripmasters' 1982 tour. There was a dispute about the rights and obligations of the parties pursuant to a 1982 tour agreement, which led to a suit by the hotel and recovery against Tripmasters for a $61,286.55 indebtedness. Tripmasters counterclaimed, seeking (1) a judgment declaring "whether there is a legal, binding, contractual obligation between the parties wherein the Defendant is required to lease the Eden Roc Hotel facilities [for a five-year period] as set forth in the parties' oral agreement, memorandum thereof or the letter of April 6, 1982," and (2) damages, in excess of $300,000, to Tripmasters' goodwill and business reputation arising from Club Eden Roc's failure to properly staff the hotel and provide services for guests during the 1982 tour.
Tripmasters claims that the parties entered into a five-year oral lease agreement, the essential terms of which were set out in two documents. Reference is made to a four-page proposed contract for 1983-87, dated March 31, 1982, which was submitted to the hotel as an offer. The parties agreed that the hotel refused to sign the contract because it was dissatisfied with some of its terms.[1] Tripmasters also relies on a memorandum from the hotel, dated April 6, 1982, which quotes room prices based on a 250 room tour package for 1983-87, "subject to entering into a more formal Agreement containing mutually satisfactory terms and conditions."
The trial court entered a judgment for Tripmasters in the amount of $988,221.95, to be reduced by the amount of the hotel's judgment against Tripmasters. That figure represented loss of profits for the 1983-87 Passover group tours, including a $500 deposit, dated March 31, 1982. Implicit in the damage award to Tripmasters is a finding that the parties entered into a five-year Passover lease agreement. No version of the evidence supports that finding.
Edward L. Nezelek, Inc. v. Southern Bell Telephone and Telegraph Co., 383 So.2d 979 (Fla. 4th DCA 1980), relied on by Tripmasters, is not supportive of its argument. A letter memorandum relied upon by the contractor in Nezelek was an unequivocal acceptance of a bid, contemplating the execution of a formal contract at some later date. In this case, Club Eden Roc's memorandum was clear that no rights or obligations would arise between the parties until the execution of an agreement containing all the terms and *1324 conditions. Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time. Housing Authority of City of Fort Pierce v. Foster, 237 So.2d 569 (Fla. 4th DCA 1970).
We need not belabor the second point as Tripmasters presented no evidence of damage to goodwill and reputation and the trial court, correctly, made no finding of such damage.
Reversed and remanded with instructions to enter judgment for appellant on the counterclaim.
NOTES
[1] Attached to the contract was a $500 check upon which Tripmasters wrote "Deposits on Passover groups: 1983, 1984, 1985, 1986 and 1987." The hotel admitted to having accepted and cashed the check, either accidentally or as partial satisfaction of Tripmasters' unpaid debt for the 1982 tour. The cashing of the check alone does nothing to cure the absence of a meeting of the minds as to material terms. Eden Roc's $61,286.55 judgment should be reduced by the amount of the check.