FRANK, RICHARD H., Associate Judge.
Revlon Group, Inc., formerly known as Pantry Pride Enterprises, sued US Realty, Inc. and Sun Bank in this action for breach of an assignment and sublease. US counterclaimed on the theory of promissory es-toppel, claiming it had made substantial improvements to the premises on which Revlon claimed there was rent due and owing. The trial court determined that Revlon could not prevail in its action against Sun Bank, that US had been unjustly enriched by its failure to pay the fair rental value of the space it had been using but that Revlon had not established that US had breached the contract between them, and that US’s claim based upon promissory estoppel was valid. Therefore, the court awarded Revlon $286,209.00 from US, to be set off by the amount US had expended for improvements to the premises, $143,842.00. We affirm in all respects.
This case involves a store in the Lauder-dale Manor Plaza Shopping Center, owned by Sun Bank, which had purchased the property as trustee for Dr. Robert Corn-feld, the sole beneficiary of the land trust. The Great Atlantic and Pacific Tea Company, Inc. (A & P) leased the store from Sun Bank. Through an agreement dated November 19,1979, A & P subleased the store to Boogart of Florida, Inc. By its terms *367 the sublease could not be assigned without the written consent of A & P. Revlon subsequently acquired the interest of Boo-gart of Florida.
The transaction that generated the litigation before us occurred on February 11, 1985, when Revlon executed an Assignment and Assumption of Sublease with LJS in which Revlon’s interest in the store was assigned to US. A & P’s written consent to the Assignment and Assumption was a precondition to US’s obligation to pay rent. Although the Assignment was executed by US and Revlon and forwarded to A & P for its consent, A & P never indicated its approval of the transaction between US and Revlon in any writing.
After the execution of the agreement, Revlon delivered the keys to US, which took possession and undertook improvements to enable it to operate a 130-booth flea market on the premises. As found by the trial court, the improvements cost almost $144,000. US opened for business in July of 1985, and the flea market continued to operate until February of 1987.
During this time Sun Bank collected $150,000 in rent from A & P. Under its sublease Revlon remained liable to A & P for rent. In November of 1985 Revlon, having received notice from A & P that the rent for September and October had not been paid, attempted to collect the rent from US but was unable to do so. Consequently, in November of 1986 Revlon brought an action for eviction against US, Sun Bank (as guarantor), and against Corn-feld, the beneficiary of the land trust, arguing that US had breached the Assignment and Sublease agreement or, alternatively, that US was indebted to Revlon for the use of the premises. The trial court dismissed the action against Cornfeld. US filed a counterclaim for fraud or misrepresentation and asserted estoppel against Revlon.
We find that the trial court’s resolution of this dispute was legally sound and equitable. A review of the documents demonstrates beyond question that A & P’s prior written consent was a precondition to Revlon’s ability to assign its interest to US. For instance, section 13 of the agreement between A & P and Revlon (Pantry Pride) provides as follows:
13. Notwithstanding anything to the contrary contained in the ... overlease ... Pantry Pride ... shall not assign the ... premises for other than use as a supermarket without the prior written consent of A & P.
Section 15 further provides:
15. Assignment: Without the previous consent of Sublessor [A & P], neither Sublessee [Revlon], nor Sublessee’s legal representatives or successors in interest by operation of law or otherwise, shall assign or mortgage this Sublease, or sublet or license the whole or any part of the Premises or permit the Premises or any part thereof to be used or occupied by others.
Furthermore, evidence in the record indicates that US and Revlon were both aware of the necessity of A & P’s approval of their transaction, and that US was acutely cognizant of the difficulty inherent in operating without a valid lease.
Because Revlon had no power to assign its interest absent A & P’s permission the trial court correctly ruled that no valid lease existed between Revlon and US and that US was not contractually obligated to pay rent to Revlon. Allowing US to occupy the premises for 33 months without payment, however, would constitute unjust enrichment. Accordingly, US was required to pay Revlon the fair rental value of the premises. The theory of quantum meruit operates to allow recovery when, as here, a technical deficiency in a contract precludes its enforcement. See 11 Fla. Jur.2d, Contracts, section 229.
US was entitled to compensation for improvements made to the premises under the doctrine of promissory estoppel. The basic elements of that doctrine are explained in W.R. Grace and Company v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla.1989) (quoting Restatement (Second) of Contracts § 90 (1979):
A promise which the promisor should reasonably expect to induce action or for *368 bearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.... The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice.
The record reveals that Revlon encouraged US to take possession of the premises and to expend almost $144,000 in leasehold improvements, Revlon all the while assuring US that A & P’s approval of the Assignment and Assumption of Sublease would be forthcoming. That conduct warrants application of the estoppel principle.
Finally, we find US’s cross appeal without merit. US has urged that the trial court erred in failing to permit the introduction of evidence as to US’s damages as a result of US’s inability to close the sale of its business. The trial court correctly found, however, that the evidence US sought to admit was the hearsay testimony of Cornfeld concerning an offer made to him by another person. This was clearly excludable.
In accordance with the foregoing, the Final Judgment under review is affirmed.
HERSEY, C.J., and DOWNEY, J., concur.