712 So.2d 1249 (1998)
MIDTOWN REALTY, INC. and Carlos C. Fiori, Appellants,
v.
Akhtar HUSSAIN and Malico, Inc., Appellees.
No. 97-3455.
District Court of Appeal of Florida, Third District.
July 8, 1998.
*1250 Harvey D. Rogers, Miami, for appellants.
Perez, Goran & Rodriguez and Javier J. Rodriguez, Coral Gables; Lyons & Smith, Miami, for appellees.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
PER CURIAM.
The plaintiffs, Midtown Realty, Inc. and Carlos C. Fiori, appeal from a final judgment of dismissal. We affirm.
On June 23, 1994, Midtown Realty, Inc. [the Realtor], entered into an Open Listing Agreement with Akhtar Hussain and Malico, Inc. [the Sellers] for the sale of a gas station at a listing price of $1.1 million. The Open Listing Agreement provided that the Realtor would receive a 5% commission associated with the sale.
On August 5, 1994, Charles A. Fiori [the Purchaser] signed a two-page "LETTER OF INTENT" directed to the Realtor stating:
The following is our proposal for the purchase of the HESS SUPER GAS STATION located at: 1368[sic] S.W. 8th Street, Miami, Fla.
This proposal is based on the financial representations supplied by the seller ... [about] operating income ... [and] approved plans for expansion of the building for a possible restaurant facility....
The "PROPOSAL" followed giving a proposed purchase price, a proposed plan for financing, a proposed inspection period, and a proposed closing date. The Letter of Intent provided, "If these TERMS and CONDITIONS are acceptable to the Seller, Purchaser shall present to the Seller a more detailed and formal Purchase Agreement...." The Purchaser's signature followed. Below the Purchaser's signature, the Letter of Intent stated, "The basic terms and conditions offered in this letter of proposal are acceptable," and provided a signature line for the Seller.
The Sellers' representative reviewed the Letter of Intent and changed one of the financial representations upon which the Purchaser's proposal was based, reducing the number of gallons of gasoline sold per day from 6,500 to 5,000. The Sellers' representative also added terms providing that the property would be sold "as is" and that the purchaser would assume the Hess contract. These changes were not initialed by any of the parties. The Sellers' representative then signed and dated the Letter of Intent on August 5, 1994.
*1251 On August 12, 1994, the Purchaser presented a "more detailed and formal" Purchase and Sale Agreement to the Sellers. This nine-page document was executed by the Purchaser and included provisions relating, not only to the purchase price, the financing, the inspection period, and the closing date, but also, to the time for acceptance, allocation of expenses, evidence of title, DERM and environmental requirements, accounts receivables, existing creditors, licenses, zoning and government approval, risk of loss, etc. The Sellers made several changes to the Purchase and Sale Agreement, including but not limited to, the date of acceptance, the inspection period, the broker's compensation, the percentage rate of financing, and the closing date. The revised Purchase and Sale Agreement was executed by the Sellers and returned to the Purchaser on August 16, 1994, after the time for acceptance provided by the Purchaser had expired.
On August 19, 1994, the Purchaser informed the Sellers by letter that he could not agree to two of the Sellers' amendments to the Purchase and Sale Agreement stating, "We need these matters addressed now otherwise we cannot proceed with the legal discoveries and other procedures which would represent expenses for a transaction which shall not be consumated [sic]." Because the parties could not agree on these changes, the Sellers withdrew the property from the market.
On December 23, 1995, the Realtor and the Purchaser filed suit against the Sellers alleging breach of contract, and seeking specific performance and damages. The Purchaser alleged that the parties had entered into a binding contract, while the Realtor alleged that, regardless of whether a binding agreement existed, he was entitled to a commission because he produced a buyer that was ready, willing, and able. The Sellers filed their answer and affirmative defenses arguing that no binding contract for the sale of the property existed.
The case was set for trial on October 21, 1997. Before trial, the Purchaser made an election of remedies and dropped the claim for specific performance. Thereafter, the trial court entered a Final Judgment of Dismissal concluding that the plaintiffs' claims are based on the following documents: the Letter of Intent, the Purchase and Sale Agreement, and the Open Listing Agreement. The court found "these documents to be clear, unambiguous and not subject to conflicting inferences." Further, the court found "from the clear language of the documents that the Sellers and [the Purchaser] were continuing to negotiate the terms of the proposed sale, that a final agreement was never reached and that the Letter of Intent is not a binding agreement. Therefore, [the Purchaser's] claim for breach of contract is insufficient as a matter of law." Furthermore, the trial court found "that the [Realtor's] claim that it is entitled to a commission, even in the absence of a binding agreement between the Sellers and [the Purchaser], is directly contradicted by the terms of the Open Listing Agreement. [The Realtor's] claim is also insufficient as matter of law." The Realtor and the Purchaser appeal from this Final Judgment of Dismissal. We affirm, in part, and reverse, in part.
The plaintiffs contend that the trial court erred by entering a final judgment of dismissal where the complaint stated a cause of action for breach of contract. Specifically, the plaintiffs contend that the Letter of Intent formed a binding agreement between the Sellers and the Purchaser for the sale of the property. We disagree.
It is well established ... that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds.
Central Properties, Inc. v. Robbinson, 450 So.2d 277, 280 (Fla. 1st DCA 1984). Moreover, "[w]here the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time." Club Eden Roc, Inc. v. Tripmasters, Inc., 471 So.2d 1322, 1324 (Fla. 3d DCA 1985).
The question of whether the parties intended to form a binding contract is determined by examining the language of the *1252 document in question and the surrounding circumstances. 1 RICHARD A. LORD, WILLISTON ON CONTRACTS, § 4:8 at 306-07(4th ed. 1990) ("[F]requently, where the parties contemplate a future written contract, it is obvious from their language or other surrounding circumstances that other matters, as to which no definite agreement has been reached, are expected to be included in the writing.")
In the instant case, the document in question was titled "LETTER OF INTENT." "A letter of intent is customarily employed to reduce to writing a preliminary understanding of parties who intend to enter into contract...." BLACK'S LAW DICTIONARY 904 (6th ed.1990). In the text of the Letter of Intent, the Purchaser detailed the financial assumptions that formed the basis for his preliminary negotiations with the Sellers. Also, the Purchaser repeatedly called the Letter of Intent a "proposal," which in this context meant, not an "offer" but, an "initial overture or preliminary statement for consideration by the other party to a proposed agreement. As so used, [a proposal] is not an offer but it contemplates an offer and hence, its acceptance does not ripen into a contract." BLACK'S LAW DICTIONARY 1219 (6th ed.1990). Further, the Letter of Intent provided, "If these TERMS and CONDITIONS are acceptable to the Seller, Purchaser shall present to the Seller a more detailed and formal Purchase Agreement...." In this context, the Letter of Intent is nothing more than an "agreement to agree."
Courts generally consider several factors to determine whether mutual assent to be bound exists including "the type of contract at issue, the number of terms agreed upon relative to all of the terms to be included, the number of details yet to be ironed out, the relationship of the parties, and the degree of formality attending similar contracts, among other factors." 1 RICHARD A. LORD, WILLISTON ON CONTRACTS, § 4:8 at 305-06 (4th ed.1990). The proposal in this case dealt with the sale of a gas station, a complex situation that includes environmental concerns, the attainment of licenses and government approval, and the financing of a large sum of money, among other things. Under these circumstances, it is more than reasonable to conclude that the parties did not intend to be bound by a skeletal Letter of Intent.
On appeal, the plaintiffs, the Purchaser and the Realtor, now argue that the Letter of Intent contained all of the essential terms and that they intended to be bound by it. However, this position is directly contradicted by the Purchaser's own writing. When the Purchaser responded to the Sellers' amendments to the Purchase and Sale Agreement, he told them that he could not accept two of their amendments and that if they did not address these matters, the transaction would not be consummated. Clearly, the Purchaser, like the Sellers, believed that until the Purchase and Sale Agreement was executed, there would be no binding contract.
For these reasons, the trial court properly concluded that the parties were continuing to negotiate the terms of the proposed sale, that a final agreement was never reached, that the Letter of Intent was not a binding agreement, and that the Purchaser's claim for breach of contract was insufficient as a matter of law. Therefore, we affirm the trial court's judgment of dismissal.
Lastly, we reverse that portion of the trial court's order reserving jurisdiction to award attorney's fees and costs where the record demonstrates that the Sellers did not file a demand for fees.
The plaintiffs' remaining points lack merit.
Affirmed, in part; reversed, in part.