UNIVERSITY CREEK ASSOCIATES II, LTD., a Florida Limited Partnership, Plaintiff,

v.

BOSTON AMERICAN FINANCIAL GROUP, INC., a Delaware Corporation, f/k/a Bostonia American Financial Group, Inc., and Credit Suisse First Boston Mortgage Capital LLC, a New York Corporation, Defendant.

No. 98–6643–CIV.

United States District Court, S.D. Florida.

Oct. 21, 1998.

Steven Mark Katzman, Tew Cardenas Rebak Kellogg Lehman Demaria & Tague LLP, West Palm Beach, FL, Andrew T. Lavin, Navon Kopelman O'Donnell & Lavin, Fort Lauderdale, FL, for Plaintiff.

William R. Clayton, Patrick Edward Gonya, Jr., Fowler White Burnett Hurley Banick & Strickroot, Miami, FL, for Defendants.

### ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendants' Boston American Financial Group, Inc. and Credit Suisse First Boston Mortgage Capital LLC motion to dismiss complaint. For the reasons stated below, the Court grants in part and denies in part the defendants' motion.

### STANDARD OF REVIEW

To state a claim, *Fed.R.Civ.P.* 8(a) requires, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." The court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the plaintiff." *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988) (citation omitted), *aff'd,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this circuit is well-settled that "the accepted rule for appraising the sufficiency of a complaint is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988) *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988), (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hospital Corp. of America,* 795 F.2d 948, 953 (11th Cir.1986).

### FACTUAL AND PROCEDURAL BACKGROUND

In June, 1997, Bostonia American Financial Group, Inc.[1] (hereinafter "Bostonia") offered Mercader, Schwartz, Karp & Company (hereinafter "MSK") to procure a loan for the acquisition of a piece of real property, which is leased and occupied by a Winn–Dixie Store. At closing, Bostonia would assign the funding of the loan to Credit Suisse First Boston Mortgage Capital LLC ("Credit Suisse"). Complaint at ¶ 7. Allegedly, Bostonia and Credit Suisse told MSK that a "special purpose entity" needed to be formed to become the borrower for the proposed loan. Thus, Plaintiff University Creek Associates II, LTD. (hereinafter "University") was formed to borrow the necessary money and acquire the property. Complaint at ¶ 6.

The complaint alleges that, on or about July 18, 1997, Bostonia submitted to MSK an application letter for the loan. MSK signed and returned the letter to Bostonia with a check made payable to Bostonia in the amount of eighteen thousand ($18,000) dollars. On September 10, 1997, Bostonia, Credit Suisse, and MSK allegedly executed a commitment agreement whereby Bostonia and Credit Suisse agreed to provide University with either a fully amortized or an insured residual balance loan for acquisition of the property. Contemporaneously with the loan negotiations, MSK or its

---

1. Bostonia American Financial Group, Inc. is now known as Boston American Financial Group, Inc.

related companies paid a $200,000 non-refundable deposit to the seller of the property. Complaint at ¶ 8.

Thereafter, Bostonia and Credit Suisse allegedly sent MSK a second commitment agreement, providing less favorable financial terms and requiring the performance of a number of additional conditions precedent to the closing of the loan.[2] University claims that it sought to have Bostonia and Credit Suisse perform in accordance with the first commitment agreement, and after they refused, University notified Bostonia and Credit Suisse that it was seeking financing from another source and holding them liable for all of the damages it suffered as a result of their "breach of the commitment agreement." Complaint at ¶ 16. Eventually, University obtained financing from another source.

University asserts that, relying on Bostonia's statements and correspondence, it incurred expenses and materially changed its position in order to close the financing with Bostonia and Credit Suisse. Complaint at ¶ 14. According to the complaint, University (1) forbore actively proceeding with alternative sources of financing for the property; (2) expended time and money working on the loan documents, (3) communicated with Winn–Dixie to resolve lease-related issues, and (4) obtained an extension on the closing date, in consideration for which University paid the seller an additional $200,000 non-refundable deposit, bringing the total deposit to $400,000. MSK has assigned "all of its right, title and interest in the commitment agreement and the chose in action of the breach thereof to University, effective October 31, 1997." Complaint at ¶ 19; Exhibit "H".

University has brought a four count complaint against Bostonia and Credit Suisse, asserting: (1) breach of contract; (2) anticipatory repudiation; (3) promissory estoppel; and (4) breach of good faith and fair dealing. Bostonia and Credit Suisse argue that the complaint should be dismissed due to: (1) lack of standing; (2) failure to establish to existence of a valid and enforceable contract; and (3) nullity of the claim for breach of good faith and fair dealing in the absence of an express contract.

## DISCUSSION

### A. STANDING

Bostonia and Credit Suisse first contend that University's complaint should be dismissed for lack of standing because the assignment from MSK to University is invalid. Defendants' Motion to Dismiss at ¶ 1. Rule 17(a) states that "every action shall be prosecuted in the name of the real party in interest." "Standing is similar to the real party in interest rule inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542 (2d ed. Supp.1998).

■ In construing assignments, the court must determine (1) exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest, and (2) that a valid assignment has been made. 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1545 (2d ed.1990). The validity of an assignment is important for the purpose of determining "whether an action should be dismissed." *Id.* In general, "contracts are assignable unless forbidden by the terms of the contract, or unless the assignment would violate some rules of public policy or statute, or unless the terms of the contract are such as to show reliance on the personal credit of the purchaser." *Kitsos v. Stanford,* 291 So.2d 632, 634 (Fla. 3rd DCA 1974).

■ Bostonia and Credit Suisse assert that MSK had no rights or interest in the

2. According to the complaint, MSK deemed the second commitment agreement to constitute a repudiation of the first commitment agreement.

commitment letter because it was issued to a related company, Southeast, and not MSK. Defendants' Motion to Dismiss at 7. Exhibits "A" and "C", however, indicate that both Bostonia and Credit Suisse knew that they were dealing with MSK.[3] First, the commitment letter is signed by Bostonia, Credit Suisse, and MSK. Second, Bostonia's correspondence relating to the commitment letter is addressed to "Mr. Stanley Schwartz, President, Mercader, Schwartz, Karp & Co., c/o Southeast Property Associates Inc." Therefore, it cannot be said that MSK is not a party to the loan commitment. Because the terms of the commitment letter do not forbid assignment and because the assignment does not appear to violate public policy or statute, the assignment by MSK to University is valid. Hence, University has standing to assert the breach of contract claims contained in Counts I, II, and IV of the complaint.[4]

### B. THE CLAIMS FOR BREACH OF CONTRACT (COUNT I) AND ANTICIPATORY REPUDIATION (COUNT II)

Bostonia and Credit Suisse next assert that the commitment letter did not constitute "a final, binding agreement ... upon which [University] is entitled to sue for breach." Defendants' Motion to Dismiss at 9. A binding and enforceable contract requires "mutual assent to certain and definite contractual terms; without a meeting of the minds on all of the essential terms, no enforceable contract arises." *Matter of T & B General Contracting, Inc.*, 833 F.2d 1455, 1459 (11th Cir.1987). In determining whether mutual assent exists, the following factors must be considered: "(1) the type of contract at issue, (2) the number of terms agreed upon relative to all of the terms to be included, (3) the number of details yet to be ironed out, (4) the relationship of the parties, and (5) the

degree of formality attending similar contracts." *Midtown Realty, Inc. v. Hussain,* 712 So.2d 1249, 1252 (Fla. 3rd DCA 1998). Moreover, "where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." *Suggs, Jr. v. Defranco's, Inc.,* 626 So.2d 1100, 1101 (Fla. 1st DCA 1993).

At issue here is a proposed loan agreement for the purchase of a piece of real property. The commitment letter upon which University relies (1) proposes two types of loans—a fully amortized loan and an insured residual balance loan,—and, depending on which loan is used, the principal loan amount varies; (2) sets forth a number of conditions precedent, required to be satisfied forty-eight hours prior to the loan closing; (3) states, "this proposal represents an expression of interest on the part of [Bostonia] to enter into an agreement to provide financing, subject to changes in market conditions"; and (4) does not specify an interest rate.

A breach of contract claim predicated on an instrument that fails to specify the amount of interest, terms of repayment, or funding does not state a cause of action under Florida law. *Forest Creek Development Co. v. Liberty Savings & Loan Ass'n,* 531 So.2d 356, 357 (Fla. 5th DCA 1988). Because essential terms of this loan agreement are lacking, University's claims for breach of contract and anticipatory repudiation must be dismissed.

### C. DUTY OF GOOD FAITH CLAIM (COUNT IV)

Count IV of the complaint asserts that Bostonia and Credit Suisse breached the implied covenant of good faith presumed in every contract under Florida Law. However, "a party cannot maintain a claim for breach of the implied covenant of good faith where the party cannot claim a

---

**3.** *Fed.R.Civ.P.* 10(c) provides that, "any exhibit attached to a pleading shall be considered a part thereof for all purposes."

**4.** The Court addresses the issue of standing with respect to Count III in a later portion of this opinion.

breach of any express contractual provision." *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1438 (S.D.Fla.1996). Because University's breach of contract claim is subject to dismissal, this claim too must be dismissed.

### D. PROMISSORY ESTOPPEL (COUNT III)

 Count III of the complaint asserts a claim for promissory estoppel against Bostonia and Credit Suisse. Under the theory of promissory estoppel, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice." *Revlon Group, Inc. v. LJS Realty, Inc.*, 579 So.2d 365, 367–68 (Fla. 4th DCA 1991).

University-assignee may assert a claim of promissory estoppel against Bostonia and Credit Suisse because "... an unqualified assignment transfers to the assignee all the interests of the assignor in and to the thing assigned. The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made." *State v. Family Bank of Hallandale*, 667 So.2d 257 (Fla. 1st DCA 1995). In *Revlon, supra,* a sublessee executed an invalid assignment and assumption of a sublease because the parties did not obtain the written consent of the lessor. Notwithstanding the fact that no valid lease existed between the sublessee-assignor and assignee, the assignee was entitled to compensation for improvements it made on the premises under the doctrine of promissory estoppel. *Id.* Unlike the sublessee in *Revlon,* MSK-assignor expressly assigned to University-assignee "all of [its] right, title and interest in and to the commitment agreement ... and the chose in action constituting all claims arising from the commitment agreement and the business dealings among the parties to the commitment agreement." *See* Exhibit "H". Therefore, University has standing to pursue the claim for promissory estoppel asserted in Count III.

### CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Bostonia and Credit Suisse motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** with prejudice as to Counts I, II, and IV for failure to state a claim upon which relief can be granted. The motion is **DENIED** in all other respects. The defendants have fifteen days from the date of this order to answer Count III.