| .CLARENCE E. McMANUS, Judge.
Plaintiffs, David and Rick Morales, appeal the jury verdict in favor of defendants, Dr. Ruary O’Connell and Columbia Jefferson d/b/a Elmwood Medical Center and Skilled Nursing Facility. For the reasons which follow, we affirm the jury’s verdict.

STATEMENT OF THE CASE

On July 8, 1996, Sarah Dutton, a' sixty-nine year old obese woman, underwent gastric bypass surgery at Elmwood Medical Center. The surgery was performed by Dr. Ruary O’Connell, a bariatric surgeon. Dutton continued to improve post-operatively and, on July 11, 1996, Dr. O’Connell transferred her to the Skilled *604 Nursing Facility at the Elmwood Medical Center. Dr. O’Connell prepared a transfer form and orders. Dutton was transferred at 2:30 p.m. on July 11, 1996. According to Dr. O’Connell’s orders, Dutton’s vital signs were to be taken every four hours. Dutton’s chart indicated that the first vital signs were taken at 2:30 p.m. on July 11, 1996 by Gilda Bourgeois, R.N. Bourgeois testified that at the time of admittance, she heard “crackles” in Dutton’s lungs using a stethoscope. Dutton’s abdomen was hard and distended and her bowel sounds were sluggish. Bourgeois did not call Dr. O’Connell at that time. Her vital signs were taken again at 4:30 p.m. and midnight. After the 4:30 p.m. exam, Bourgeois {-¡did contact Dr. O’Connell and he ordered a Fleet enema, which was administered at 7:00.
Bourgeois testified that Dutton’s vitals were taken the next morning, July 12, 1996, at 8:00 a.m. At that time, she noted that Dutton’s breathing was rapid and shallow with “crackles”, indicating the presence of fluid in her lungs. Bourgeois again noted that her abdomen was firm and distended and her bowel sounds were sluggish. Bourgeois did not call Dr. O’Connell at that time. At 10:00 a.m., Dutton’s vitals were unchanged.
At 12:00 p.m., Bourgeois found Dutton to be hyperventilating with complaints of nervousness. She calmed Dutton down and called Dr. O’Connell and left a message. Dr. O’Connell spoke to Bourgeois at 1:15 and he ordered Xanax and a complete blood count. Bourgeois administered the Xanax at 1:15 and noted that at 1:40 p.m. Dutton had calmed down. By 2:00 p.m., Dutton was resting quietly with her eyes closed.
At 3:00 p.m., Bourgeois went into Dut-ton’s room to hang IV fluids. At that time she noted Dutton appeared to not be breathing. Bourgeois shook her shoulder and called her name. Bourgeois noted cyanosis around the mouth and noted that she was cool to the touch. Bourgeois called a code and resuseitative efforts were instituted, but were unsuccessful. Dr. O’Connell was paged and he stopped the code and pronounced Dutton dead after he arrived.
An autopsy was performed by the coroner, Dr. Roy Hemelt, who died prior to trial. According to the autopsy report, there was no direct cause of death, but notes a probable fatal ventricular arrhythmia. Dr. O’Connell noted a lethal ventricular arrhythmia as the cause of death on the death certifícate. Dr. Gerald Liuzza, a pathologist, also testified that the likely cause of death was a fatal ventricular arrhythmia.
|4Putton’s husband, Granville Dutton, and her children, David and Rick Morales, filed a medical malpractice claim against Dr. O’Connel and Columbia Jefferson d/b/a Elmwood Medical Center and Skilled Nursing Facility. A medical review panel reviewed the matter and found that the evidence does not support the conclusion that defendants failed to meet the applicable standard of care. The panel found that there was no evidence that Dr. O’Con-nell failed to perform the gastric stapling procedure properly and there was no indication that there were necessary preoperative tests omitted. The panel found Dr. O’Connell’s post-operative care to be adequate and appropriate. Further, the panel found that Dutton was closely monitored at the skilled nursing unit and there was nothing to suggest that the sedation was inappropriate or excessive.
Granville Dutton died before trial was held. His counsel attempted to substitute his daughter as plaintiff, however, she failed to appear for trial or for her deposition. Therefore, his claim was ultimately dismissed.
*605 At the time of trial, plaintiffs argued that Dutton’s arrhythmia was caused by “gross fluid overload.” They further argued that Dr. O’Connell breached the standard of care by failing to appropriately manage Dutton’s fluid level and the nursing staff of Elmwood breached the standard of care by failing to adequately record Dutton’s intake and output, failing to advise Dr. O’Connell that Dutton was carrying excess fluid, and failing to take vital signs every four hours, as ordered.
Dr. Brobson Lutz testified at trial as the plaintiffs’ medical expert in internal medicine. He testified that he believed the cardiac arrhythmia was caused by gross fluid overload. Dr. Lutz further opined that Dutton’s fluid intake was grossly disproportionate to her urine output, triggering the arrhythmia. Dr. Lutz based this opinion on the coroner’s finding that Dut-ton’s lungs contained pulmonary congestion and his theory that pulmonary congestion equals pulmonary edema and | ,-jluid in the lungs which could have caused the arrhythmia. As to Dr. O’Connell’s alleged negligence, Dr. Lutz simply testified that he was not sure Dr. O’Connell had watched the fluids the way they should have been watched and Dutton would have been better managed in the hospital than in the skilled nursing facility.
At trial, Dr. Gerald Liuzza, a forensic pathologist, testified that the likely cause of death was cardiac arrhythmia and there was no evidence of excess fluid in Dutton’s body or her lungs. Dr. James McKinnie and Dr. Thomas Lavin, a general surgeon, also testified that Dutton died of a cardiac arrhythmia and, further, the taking of vital signs two hours before would not have predicted the arrhythmia. Dr. Lavin found that the nursing staff adequately monitored Dutton and the taking of her vital signs and the monitoring of intake and output was appropriate. Dr. Rene DeBoisblanc, a general surgeon, also agreed that the nursing staff adequately monitored Dutton.
A jury trial was held and the jury found in favor of defendants, Dr. O’Connell and Elmwood. Plaintiffs, David and Rick Morales, now appeal.

DISCUSSION

On appeal, plaintiffs allege one assignment of error: that the jury was clearly wrong in failing to find that an employee of Elmwood Medical Center and Columbia Jefferson/Elmwo’od Skilled Nursing Facility breached the applicable standard of care. In opposition, defendants argue that any fault on the part of the nursing staff in no way caused or contributed to Dutton’s death.
A court of appeal may not set aside the jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State through DOTD, 92-1328 (La.4/12/93), 617 So.2d 880, citing Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has provided a two-part test for the reversal of a factfinder’s determinations: 1) The appellate court must find from the record | fithat a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart, citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The test provides that a reviewing court must do more than simply review the record for some evidence which supports or controverts the. trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the *606 factfinder’s conclusion was a reasonable one. Id.
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, citing Ro-soli, supra. This Court has noted that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’” Stobart, citing, Housley v. Cerise, 579 So.2d 973 (La.1991), quoting Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990).
Malpractice claims against a hospital are subject to the general rules of proof applicable to any negligence action: the plaintiff must prove a standard of care, a breach of that standard, causation, and damages. Allello v. Smith, 94-103, (La. 5th Cir.7/26/94), 641 So.2d 664, citing Smith v. State through Dept. of Health and Human Resources, 523 So.2d 815, 819 (La.1988). Whether alleged malpractice constitutes negligence is a question for the jury. Aiello, citing Hastings v. Baton 7Rouge Gen. Hosp., 498 So.2d 713, 722 (La.1986). In addition, the manifest error rule applies in appeals of medical malpractice actions. Alello, citing Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272, 1276 (La.1991).
It is the jury’s duty to assess the testimony and credibility of all witnesses and to make factual determinations regarding these evaluations. Alello, citing Williams v. Hotel Dieu Hosp., 593 So.2d 783, 787 (La. 4th Cir.1992). In a medical malpractice case, “a reviewing court will give great deference to a jury’s findings when medical experts express different views, judgments, and opinions on whether the standard of care was met in any given case.” Alello, supra, citing Maxwell v. Soileau, 561 So.2d 1378, 1387 (La.App. 2nd Cir.), writs denied, 567 So.2d 1123 and 567 So.2d 1124 (La.1990).
Expert opinions are necessary sources of proof whose views are persuasive, though not controlling, and any weight assigned to their testimony by the jury is dependent upon the expert’s qualifications, experience, and studies upon which his testimony is based. Alello, supra, citing Harmon v. Levenson, 534 So.2d 486, 488 (La.App. 5th Cir.1988). When a factfinder’s decision is based on crediting the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Alello, supra, citing Rosell v. ESCO, supra.
In this case, many experts testified at trial and the jury had the opportunity to hear the testimonies of these experts, as well as the testimonies of the other parties involved, before rendering a judgment in favor of the defendants. The jury had the opportunity and the ability to weigh the credibility of the experts and other witnesses and to make factual determinations based on those testimonies.
After a review of the record, we find that the judgment of the jury is not manifestly erroneous or clearly wrong. Based on the testimonies and evidence presented, we agree with the jury’s finding that Bourgeois did not breach the [Sstandard of care applicable to her. Drs. O’Connell, Liuzza, McKinnie, and Lavin all testified that Dutton’s death was caused by a cardiac arrhythmia. Dr. Lutz was the only expert to testify that Dutton’s death was caused by gross fluid overload, which then caused the cardiac arrhythmia. In addition, Drs. McKinnie and Lavin both *607 testified that the taking of vital signs two hours before Dutton’s cardiac arrhythmia would not have predicted the problem or the occurrence of an arrhythmia. Drs. Lavin and DeBoisblanc testified that the taking of vital signs and the monitoring of intake and output by the nursing staff was appropriate and adequate.
The testimonies presented show there was no breach of the standard of care by Dr. O’Connell, Bourgeois, or anyone else at Elmwood Medical Center. Based on the evidence presented at trial, we find the jury was not manifestly erroneous or clearly wrong in finding in favor of defendants.
We note that defendants answered the plaintiffs’ appeal, arguing that the trial court erred by allowing plaintiffs to call a rebuttal witness. That interlocutory order was the subject of an application for supervisory writs taken during trial and was denied by this Court. By this opinion, we affirm the jury’s judgment in favor of defendants, therefore, we will not address this error on appeal.
Accordingly, we affirm the jury’s verdict in favor of defendants, dismissing plaintiffs’ claims.

AFFIRMED.