FREDERICKA HOMBERG WICKER, Judge.
 

 |2This appeal arises out of a dispute over unpaid wages. For the foregoing reasons, we affirm the judgment of the trial court in part, reverse in part, and render.
 

 LAW AND DISCUSSION
 

 On Friday, May 23, 2003, Je’Lynn Boyd, Leah Roussel, Judy Breaux, Courtney Doussan, and Karen Copeland (the “appel-lees”) were discharged by their employer, the Gynecologic Associates of Jefferson Parish, Inc. (“GAJP”). At that time, GAJP was in the process of dissolving because the physician partners had determined that the business was no longer feasible. According to the appellees, they received their paychecks for the previous payroll period on Friday, May 23, 2003. That payroll period began on Thursday, May 8, 2003, and ended on |3Wednesday, May 21, 2003. The appellees contend that they were not paid for work they per
 
 *271
 
 formed on Thursday, May 22, 2003, and Friday, May 23, 2003.
 

 On June 2, 2003, the appellees filed a Petition for Damages in the First Parish Court of Jefferson Parish against GAJP. Je’Lynn Boyd and Courtney Doussan contended that they were owed $128.00 for work performed on May 22, 2003, and May 23, 2003. Leah Roussel contended that she was owed $136.00 for work performed on May 22 and May 23. Judy Breaux contended that she was owed $176.00 for work performed on May 22 and May 23. Karen Copeland contended that she was owed $4,696.51 for accrued vacation and sick pay and for work performed on May 22 and May 23.
 

 GAJP filed an Answer to Petition and Reconventional Demand on August 3, 2003. The GAJP denied the facts alleged in the appellees’ Petition for Damages. In its Reconventional Demand, GAJP alleged that Karen Copeland issued two checks during the course her employment that had not previously been approved by GAJP’s board of directors.
 

 On February 7, 2005, the appellees filed a Motion for Summary Judgment. In the memorandum accompanying the Motion, the appellees alleged that GAJP had failed to pay earned wages within three days from the date of discharge in violation of La. R.S. 23:631 and that they were therefore entitled to ninety days penalty wages pursuant to La. R.S. 23:632. The appel-lees also alleged that they were entitled to reasonable attorney fees. GAJP filed an opposition to the Motion for Summary Judgment. In the memorandum accompanying the motion, GAJP alleged that the appellees had voluntarily terminated their employment with GAJP on May 23, 2003. GAJP contended that the appellees were not entitled to penalty wages pursuant to La. R.S. 23:632 because they had not established that “demand for payment was made at the place he was usually paid.” Moreover, GAJP |,,contended that Karen Copeland was not entitled to accrued vacation and sick pay. The Motion for Summary Judgment was denied on July 19, 2006.
 

 Trial commenced in this matter on May 10, 2007. Dr. James Bohm, Dr. Janos Varos, Dr. Michael Graham, Bonnie Schilling, Donna Varos, and each of the appel-lees testified. After trial concluded, the trial judge took the matter under advisement.
 

 Judgment was rendered on July 24, 2007. The trial judge awarded Je’Lynn Boyd $128.00 in past due wages and $5,760.00 in statutory penalties. The trial judge awarded Leah Roussel $144.00 in past due wages and $6,480.00 in penalties. The trial judge awarded Judy Breaux $176.00 in past due wages and $7,920.00 in penalties. The trial judge awarded Karen Copeland $274.48 in past due wages and $12,441.60 in penalties. The trial court also awarded Karen Copeland $6,953.30 in accrued sick and vacation time and $625,770.00 in penalties on said accrued benefits. This timely appeal followed.
 

 GAJP assigns two errors to the proceedings below. First, GAJP contends that the trial court erred in awarding the appellees back pay because they had already been paid for services rendered on May 22, 2003, and May 23, 2003. Second, GAJP contends that the trial court erred in awarding the appellees penalty wages.
 

 FIRST ASSIGNMENT OF ERROR
 

 In its first assignment of error, GAJP alleges that the court erred in awarding the appellees back pay because they had already been paid for services rendered on May 22, 2003, and May 23, 2003. GAJP alleges that it presented “uncontradicted testimony” that the former president of GAJP paid the appellees for past due
 
 *272
 
 wages, thus, an award of back pay was not warranted.
 

 1 .-,GAJP relies heavily on the testimony of Dr. Michael Graham, its president until May 7, 2003. At trial, Dr. Graham was asked if he had “help[ed] any of [his] clients financially,” to which he replied, “I advanced [the appellees] the
 
 money.”
 

 La. R.S. 23:631 requires an employer to pay “the amount then due” under the terms
 
 of
 
 employment upon the discharge or termination of an employee. It provides, in pertinent part:
 

 A. (l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
 

 (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.
 

 (emphasis added)
 

 The “person employing such laborer or other employee” is the employer.
 
 See, e.g., Beaty v. Colgrove Const. Co.,
 
 420 So.2d 1271, 1272 (La.App. 3 Cir.1982). In the instant case, Dr. Graham was not the appellees’ employer at the time he advanced the appellees money; Dr. Graham resigned from GAJP on May 7, 2003 to start a new obstetrics practice but did not make the money advance until June. GAJP cannot rely on payments made by Dr. Graham
 
 after
 
 his resignation to satisfy its statutory duty to pay “the amount then due” under the terms of the appellees’ employment because Dr. Graham was not “the person employing such laborer[s] or other employee[s]” at the time he made such payments.
 

 Moreover, GAJP’s argument ignores the distinction between an “advance” and “wages.” For the purposes of La. R.S. 23:631, “wages” are equivalent to 1, “the amount then due under the terms of employment.”
 
 Boudreaux v. Hamilton Medical Group, Inc.,
 
 644 So.2d 619 (La.1994);
 
 Williams v. Dolgencorp, Inc.,
 
 2004-139 (La.App. 3 Cir. 9/29/04), 888 So.2d 260,
 
 amended on rehearing, writ denied,
 
 2005-0174 (La.3/24/05), 896 So.2d 1042. Wages are vested rights; any contract by which employees forfeit their wages if discharged before the contract is completed is unlawful. La. R.S. 23:634; Black’s Law Dictionary 1557 (7th ed.1999). An “advance” is an unconditional loan which carries with it the obligation to repay.
 
 See, e.g., Alco-Columbia Paper Service, Inc. v. Nash,
 
 273 So.2d 630 (La.App. 4 Cir.1973). After reviewing the record, we conclude that Dr. Graham’s payment to the appellees was an advance rather than payment of wages. He implored the other doctors at GAJP to “pay the girls” and testified that he told the other doctors that the appellees “deserve[d] to get paid.” When GAJP refused, he “advanced” them money. It is clear that Dr. Graham expected GAJP to pay the appellees’ wages and that he advanced several of the appellees money when GAJP rebuffed him personally.
 

 Accordingly, this assignment of error has no merit.
 

 
 *273
 
 SECOND ASSIGNMENT OF ERROR
 

 In their second assignment of error, GAJP avers that the trial court erred in awarding the appellees statutory penalty wages. More specifically, the appellees argue that the trial court erred in finding that the appellees made proper demand for payment upon it, and that the trial court erred in awarding vacation pay to Karen Copeland.
 

 Penalty Wages
 

 Penalty wages in Louisiana are governed by La. R.S. 23:631 and La. R.S. 23:632. La. R.S. 23:632 provides, in pertinent part:
 

 17Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three clays shall have elapsed from time of making the first demand following discharge or resignation.
 

 (emphasis added)
 

 Thus, to recover statutory penalty wages, an employee must prove that wages were due and owing under La. R.S. 23:631, that a demand for payment was made at the place where the employee was usually paid, and that the employer failed to pay wages due and owing following demand.
 
 See, e.g., Jackson v. Housing Authority for Parish of St. James,
 
 05-665 (La.App. 5 Cir. 3/14/06), 926 So.2d 606. These statutes, being penal in nature, must be strictly construed.
 
 Jacobs v. Brown Medical Center,
 
 93-675 (La.App. 5 Cir. 1/12/94), 631 So.2d 461,
 
 writ denied,
 
 635 So.2d 239, 1994-0373 (La.3/25/94).
 

 In
 
 Boudreaux v. Hamilton Medical Group, Inc.,
 
 94-0879 (La.10/17/94), 644 So.2d 619, the Louisiana Supreme Court addressed the definition of “wages” for the purposes of the wage penalty statutes. The
 
 Boudreaux
 
 plaintiff had been involuntarily terminated from his position. The plaintiffs employment contract provided for “a sum of money” to be paid upon involuntary termination, and he argued that said sum constituted “wages” under La. R.S. 23:632.
 
 Boudreaux,
 
 644 So.2d at 622. The defendant objected,' contending that the sum of money was a “one time” payment not due until involuntary termination, and was therefore not wages.
 
 Id.
 
 Siding with the defendant, the Court reasoned:
 

 [T]he inclusion in the statute of the words “whether the employment is by the day, week or month” seems clearly to signify that only amounts due as wages are contemplated. Otherwise these words would be superfluous. If the Isstatute is intended to cover all amounts due by the employer to the employee, regardless of whether they are wages, there is no need for the statute to specify the pay periods of wages.
 

 Since the phrase in La.R.S. 23:631 “any amount then due under the terms of employment” is modified by the phrase “whether the employment is by the hour, day, week, or month” (pay period), it is obvious that “the amount then due under the terms of employment” set forth in La.R.S. 23:631 refers to wages which are earned during a pay period. In other words, “terms of employment”
 
 *274
 
 refers to a particular pay period. Therefore, only compensation that is earned during a pay period will be considered wages under the statutes. This interpretation is consistent with the references to “wages” throughout the statutes.
 

 (emphasis added) (citing
 
 Stell v. Caylor,
 
 223 So.2d 423, 426 (La.App. 3d Cir.),
 
 writ refused,
 
 254 La. 778, 226 So.2d 770 (1969)).
 

 Here, the appellees established that they were not paid two days wages. They introduced checks and pay stubs into evidence indicating that their standard ten-business day pay period began on Thursday and ended on Wednesday. All four appellees established through internal records that they worked on Thursday, May 22, 2003, and Friday, May 23, 2003. They were paid on Friday, May 23 for the previous pay
 
 period
 
 beginning on Thursday, May 8, 2003, and ending on Wednesday, May 21, 2003. However, the appellees were not paid wages for
 
 services
 
 performed on May 22 or May 23. Thus, GAJP is subject to the penalty provisions of La. R.S. 23:632 and must pay the ap-pellees “for ninety days wages” at their “daily rate of pay.”
 

 Demand for Payment
 

 GAJP alleges that the appellees did not make a proper “demand for pay-, ment” upon it. We disagree. The appel-lees established through testimony that they asked former GAJP president Dr. Michael Graham to intercede on their behalf, and that he in turn asked the remaining GAJP directors to pay the appellees for labor performed on May 22, 2003, and Friday, May 23, 2003. In addition, the appellees made proper demand for payment by filing suit. GAJP’s assertion that |9the filing of a lawsuit against a former employer for unpaid wages does not constitute demand for payment is wholly without merit. The Louisiana Supreme Court has held that when a “defendant denies liability after suit is filed, technical deficiencies in a pre-suit demand are waived by him and will not defeat the imposition of statutory penalties designed to enforce prompt payment.”
 
 Carriere v. Pee Wee’s Equipment Co.,
 
 364 So.2d 555, 557 (La.1978).
 
 See also Gatte v. Coal Operators Cas. Co.,
 
 256 La. 325, 236 So.2d 485 (1970). In the instant case, GAJP denied liability after suit was filed, therefore, it waived any objection to pre-suit demand.
 

 Vacation and Sick Pay
 

 GAJP alleges that the trial court erred when it awarded accrued vacation and sick pay to Karen Copeland. GAJP additionally contends that the trial court erred in applying the penalty provisions of La. R.S. 23:632 to the award of accrued vacation pay. We disagree with the former premise, but agree with the latter.
 

 La. R.S. 23:631(D) provides:
 

 D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
 

 (a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
 

 (b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
 

 (2) The provisions of this ■ Subsection shall not be interpreted ■ to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
 

 Additionally, La. R.S. 23:634 strictly forbids an employer from requiring an em
 
 *275
 
 ployee to, by contract, forfeit wages upon termination. To wit, section La. R.S. 23:634(A) provides:
 

 l1ftA. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
 

 The jurisprudence is clear that accrued vacation benefits are “wages” for the purposes of La. R.S. 23:631 and La. R.S. 23:632.
 
 See, e.g., Wyatt v. Avoyelles Parish School Bd.,
 
 2001-3180 (La.12/4/02), 831 So.2d 906. In
 
 Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc.,
 
 1997-1784 (La.3/4/98), 707 So.2d 1233, 1235 the Louisiana Supreme Court concluded:
 

 When an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is earned during a pay period under
 
 Boudreaux.
 
 As such, accrued vacation time is an “amount then due under the terms of employment” and constitutes wages under La. R.S. 23:631.
 

 The same is true for accrued sick benefits. At trial, Karen Copeland established that she was owed 402.39 hours of accrued vacation and sick leave. Karen Copeland was therefore entitled to $6,953.30 in accrued vacation and sick leave, which represents 402.39 hours of vacation and sick leave at $17.28 an hour. Thus, we find that the trial court did not en- in awarding $6,953.30 in accrued vacation benefits and sick benefits to Karen Copeland.
 

 However, we find that the trial court erred in applying the penalty provisions of La. R.S. 23:632 to the award of accrued vacation pay and sick pay. As previously mentioned, Karen Copeland is entitled to ninety days penalty wages because she made proper demand on GAJP and GAJP failed to pay wages that were due and owing. The parties stipulated prior to trial that Karen Copeland’s hourly wage was $17.28 and that her daily wage was $138.24. Accordingly, Karen Copeland is entitled to $12,441.60 in statutory penalties, which represents ninety Indays wages at $138.24 per day. She is not entitled to $625,770.00 in penalties on the accrued benefits.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the portion of the trial court’s judgment awarding past due wages and statutory penalties to Je’Lynn Boyd, Leah Roussel, Judy Breaux, and Karen Copeland is affirmed. The portion of the trial court’s judgment awarding $6,953.30 in accrued vacation benefits and sick benefits to Karen Copeland is affirmed. The portion of the trial court’s judgment awarding Karen Copeland $625,770 in penalties on accrued sick and vacation leave is reversed. Judgment is entered in favor of GAJP on that claim. Costs assessed equally to the appellees and GAJP.
 
 [1]
 

 AFFIRMED IN PART; REVERSED IN PART; RENDERED.
 

 [1]
 

 .
 
 See, e.g., Theriot
 
 v.
 
 P R Farms, Inc.,
 
 527 So.2d 3 (La.App. 3 Cir., 1988) (finding that it was appropriate to split the costs equally between the parties when “the judgment was granted in favor of plaintiffs [but] they did not prevail on all issues.”).