T. A. NELSON, Ex'r, Etc., *v.* MARTHA TRIGG, et al.

4L 701
3pi583

1. PRIVIES. *How created.* The relation of privies may be created by operation of law, by descent or by voluntary or involuntary transfers from one person to another, and denotes mutual or successive relationship to the same rights of property.

2. STATUTE OF LIMITATIONS. *Color of title. Voidable deed.* A naked trespasser without color of title cannot transmit his right to a successor so as to enable the latter to couple the two possessions to form the bar of the statute of limitations, but those having color of title may transfer or convey their right by conveyance so as to enable the holder to connect successive conveyances and possessions with his own right and possession, and this, though one of the conveyances, was voidable.

3. SAME. *Creditors. Real estate of intestate. Lien. Purchaser from heirs of intestate.* Creditors of an ' itestate have no such lien on the real estate of the intestate as will prevent the bar of the statute of limitations in favor of the purchaser of the heirs of the intestate.

---

FROM SHELBY

---

Appeal from the Chancery Court at Memphis. J. O. PIERCE, Sp. Ch.

T. B. EDGINGTON for Purchasers.

H. C. KING for Creditors.

S. P. WALKER and GEORGE GANTT for Defendants.

DEADERICK, C. J., delivered the opinion of the Court.

In 1863 John Trigg died, leaving a will, of which the complainant was appointed executor, and devising to his son, James B. Trigg, a tract of about 800 acres of land in Tipton County.

The will was proved and the executor qualified in 1865. On the 20th of May, 1864, said James B. and his brother, William W. Trigg, sold and executed bond for title to said tract of land, to the firm of Lutz, Windle & Co., composed of George R. Lutz, A. B. Windle and Jacob Steinkuhl, for the consideration of $10,000. Seven thousand six hundred dollars was paid in cash, and two notes of $1,200 were taken for balance, payable respectively in twelve and twenty-four months.

On the 14th of June, 1866, Lutz & Windle assigned and conveyed, by transfer of Trigg's title bond, to their partner, Steinkuhl, who had paid the balance of the purchase money, all their interest in said tract of land.

In September, 1867, Schaller & Gerke obtained judgment against said Steinkuhl in the United States Circuit Court at Memphis, on which execution was issued and levied upon said land, and the same was sold and bought by plaintiffs, and the same was conveyed by deed to the purchasers, by the U. S. Marshal.

On the 31st of January, 1871, Schaller & Gerke sold and conveyed by deed the said tract of land to Isaac W. Bass, and on the 28th of January,

1873, Bass sold and conveyed the same by deed to York & Noblin, the present claimants, who took possession when they bought, and are still in possession of the land.

Lutz, Windle & Co., the purchasers of James B. and W. W. Trigg, took possession of the land at the time of the sale to them, in 1864, and each of the successive claimants took possession by themselves or tenants at the time of succeeding to the title as hereinbefore stated and have held continuously until the present, Noblin & York being now in possession.

The original bill in this case was filed the 20th of March, 1866, for the sale of land to pay debts of testator. It is alleged that testator left a large amount of real estate in and near Memphis and a plantation and lands on the Mississippi river, in Tipton County Tennessee. The complainant states that he is advised he has a right to sell so much thereof as may be necessarry to pay debts.

The widow, heirs and creditors of testator were made defendants to this bill. In April, 1874, an amended bill suggesting insolvency of the estate of John Trigg, deceased, was filed.

And on the 9th of January, 1874, complainant Nelson, as executor, as aforesaid, filed an amended bill alleging he had recently before learned that York & Noblin claimed title to, and were in possession of the tracts of land in Tipton County, devised to James B. Trigg by his father, which he averred should be sold to pay testator's debts, and

he prayed that they and Steinkuhl and Wooldridge be made defendants, and that the land be subjected to payment of testator's debts.

Steinkuhl, Noblin & York demurred to and answered the bill. Their demurrers were over-ruled.

In their answers Noblin & York rely upon the statute of limitations, and the continuous and adverse holding of themselves and those under whom they claim for more than seven years.

Steinkuhl, amongst other things, also relied upon the statute of limitations of seven years in an amendment to his answer, which was stricken out on motion and the cause was brought here by appeal, and at a former term of this Court it was held that the decree below in overruling the demurrers, to the bill of Nelson, was correct. But that it was error to strike out that part of the answer which relied upon the statute of limitations of seven years, and the cause was remanded.

Upon proof taken, the Chancellor held that the defense of seven years adverse possession under assurances of title had been made out and dismissed complainants bill which sought to subject said lands to sale for the payment of testator Trigg's debts, but without prejudice to any rights as between defendants.

From this decree the executor has appealed.

James B. Trigg had sold and given bond for title to his vendees, in 1864, before Nelson qualified as executor, and said vendees took possession

immediately, and the successive holders by assignment of said bond and deeds have since held unbroken possession, one from the other, up to the time (and since) of the filing of amended bill, January 9, 1874. The complainants not questioning their title or seeking to divest it by making them parties for this purpose, thus making seven years such adverse holding up to the 1st of January, 1874, being eight days before the filing of said amended bill.

This is a good defense, unless:

1. The effect of the bill, filed by the executor, was to operate as a prohibition against the sale of the land, and we do not think it can have this effect, because no bill was pending when James B. Trigg sold and executed bond for title, and surrendered possession, and the defendants who claimed the land were not made parties to the executor's bill until January 9, 1874.

2. Or, unless there was not such privity between Steinkuhl and Schaller & Gurke, as enabled the latter to connect their possession and title with that of the former.

The relation of privies may be created by operation of law, by descent, or by voluntary or involuntary transfers from one person to another, and denotes mutual or successive relationship to the same rights of property: Freeman on Judgments, sec. 162.

By Act of 1819, sec. 1, (Code, sec. 2763) seven

years adverse possession of granted land, held, by himself or those through whom he claims, by conveyance, devise, grant or other assurance of title, etc., vest in the holder the title in fee. Under this section it has been held that a sheriff's deed, founded on a void tax sale; a void deed; a decree for partition; an unregistered deed, or fraudulent or forged deed, are respectively "assurances of title" within the meaning of the act, 3 Yer. 405; 10 Hum., 214; 1 Yer., 256; 2 Swan., 656; 5 Sneed, 636; 11 Hum., 313. So also under the 2d section of the Act of 1819, (Code, sec. 2763). One in adverse possession, without "color of title" for seven years is protected to the extent of his possession by enclosure. But if the possessor holds under an assurance of title, as by title bond, or unregistered deed, he is protected to the extent of the boundaries named in his title papers: 10 Yer., 59; 3· Sneed, 329; 3 Head., 368, 1 Hum., 261.

A naked trespasser, without color of title, cannot transmit his right to a successor so as to enable the latter to couple the two possessions to make out the bar of. seven years.

But those having color of title may transfer their possession and convey their right by conveyance so as to enable the holder to connect the successive conveyances and possessions with his own right and possession. And if the right may originate in a void or forged deed we see no reason why it may not be transmitted by consecutive possession and written assurances of title, although

voidable in this case, as by the conveyance of the United States Marshal by deed, of the right of said Steinkuhl.

A court having jurisdiction rendered a judgment against Steinkuhl, and an execution was levied on this land while he held and claimed it, upon the transfer and assignment of Trigg's title bond, it was sold and possession given to the purchasers, and deed made to them for it by the Marshal, and some two years, after their possession they sold and conveyed it to Bass, and Bass sold and conveyed to the present holders. The transfer of Steinkuhl's title was involuntary, and strictly speaking, he held only an equitable title, although he had paid the purchase money, and was entitled to a conveyance from James B. Trigg, of the legal title, but his possession was turned over to the purchasers, and the deed of the Marshal purported to convey Steinkuhl's title to them, and they thenceforth claimed possession and title in themselves, as derived from and through Steinkuhl, until they sold and conveyed the land. So that from the time James B. Trigg sold and gave bond for title in 1864 down to the time this suit began this land has been successively held by written assurances of title and by continuous and unbroken possessions which connect one with the other from 1864 to 1874.

From this it will be seen defendants Noblin and York and those under whom they claim have had more than seven years actual adverse possession

under color of title, from January 1, 1867, to January 9, 1874, the date of the filing of complainant's bill against them.

The Chancellor dismissed the bill of complainants, original and amended, so far as it was sought to subject said land to sale for payment of the debts of John Trigg, deceased, but made no adjudication of any question in respect of the title of said lands as between defendants, the decree being pronounced without prejudice to such question. Steinkuhl filed his answer as a cross bill against his co-defendants, York and Noblin, claiming title against them. Even if an answer can be filed as a cross bill against a co-defendant under the statute, it is evident that Steinkuhl cannot establish such a title as will entitle him to any relief as against the complainant.

The Chancellor's decree dismissing complainant Nelson's bills, original and amended, so far as they seek to sell the land claimed and possessed by York and Noblin, or either of them, will be affirmed and modified as to the matters reserved as between defendants, and the cross bill of Steinkuhl will be dismissed. Complainant Nelson, as executor, will pay the costs of said amended bill in this Court and in the Court below, and Steinkuhl will pay the costs incident to his cross bill in this Court and in the Chancery Court.

Upon a petition to re-hear DEADERICK, C. J., said :

A petition to re-hear has been presented by

complainant's solicitor insisting that creditors of Trigg's estate have a lien upon his real estate for their debts, and that a vendee of the son of intestate and those claiming title by color of title under them cannot rely upon the statute of limitation to defeat this lien. It was pleaded as a defense and the answer setting it up was, on motion stricken out and it was held at a former term that this was error. The Court said in delivering the opinion, that "so far as we can see this defense if made out would be effectual," and the decree was reversed and cause remanded.

Upon proof taken the Chancellor held the defense made out and decreed in favor of defendants.

From this decree complainants appealed, and at the present term we affirmed that decree, holding in effect that the defendants named did by the statute of limitations acquire at least such a possessor's right as against testator's creditors as to defeat their rights to subject it to sale for payment of debts. To this opinion we adhere, and dismiss the petition for a re-hearing of the cause.