527 So.2d 3 (1988)
Robert THERIOT, et al., Plaintiffs-Appellees,
v.
P & R FARMS, INC., et al., Defendants-Appellants.
No. 87-162.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Writ Denied June 2, 1988.
*4 Guidry & Guidry, Edmond L. Guidry, III, St. Martinville, for plaintiffs-appellees.
J.B. Willis, St. Martinville, for defendants-appellants.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
The issues in this case spring from an oral agricultural lease, a change of ownership of the land affected by the lease, and the inability of the new owners and the old tenant to get together on a continuation of the lease. A lawsuit resulted, a judgment was rendered, and both sides appealed. We affirm.
The dispute involves 26½ acres of farmland in St. Martin Parish. Linda Laneaux owned the land up until 1982. The defendants in this case, P & R Farms, Inc. and its president, Daniel "Jim" Rodriguez, (herein collectively Rodriguez) had for some time been planting soybeans on the land under a verbal lease from Laneaux. In early 1982 a new farm lease, again verbal, was confected between Laneaux and Rodriguez, to begin after the 1982 harvest and go through the harvest of 1985. The renewal lease contemplated the planting of sugarcane in addition to soybeanshence a three-year term to accommodate a three-year crop (sugarcane is harvested three times off one planting). The rent agreed upon was, as before, a flat annual $400 cash payment.
Rodriguez planted the 1982 soybean crop while Laneaux still owned the land. In June 1982, which was before the harvest season, Laneaux sold the property to Robert and Anna Theriot and Clarence and Laura Hulin. These four (collectively Theriot, because Robert Theriot was their spokesman) are the plaintiffs in this case.
There was no mention of the 1982-1985 Laneaux-Rodriguez lease agreement in the sale instrument. The trial judge found that a lease was discussed between the new owners and Rodriguez but no agreement was ever reached. This finding of fact is correct.
In the fall of 1982 Rodriguez harvested the soybean crop and immediately prepared *5 the land and planted sugarcane. We continue our narration of the facts by quoting from the trial judge's reasons for judgment:
"In early 1983, defendants tendered to plaintiffs a check for $400.00 and a form for a one year lease (for calendar year 1983) (Plaintiffs' Exhibit No. 12). The check was never negotiated and the lease was never signed by anyone.
"As is the practice, defendants harvested the cane crop on plaintiffs' property in the Fall of 1983 except for approximately three acres in a low and muddy area. In early 1984, defendants tendered to plaintiff another check for $400.00 as rental for 1984 (Plaintiffs' Exhibit No. 13), which check was likewise never negotiated. On January 11, 1984, plaintiffs' lawyer wrote to defendants, rejecting the $400.00 payment and demanding payment of a 1/5 interest in the 1983 crop and a like agreement for 1984 (Defendants' Exhibit No. 5). The instant action was filed on March 29, 1984. By letter dated May 10, 1984, plaintiffs' counsel instructed defendants through their attorney to stay off the property or else criminal charges would be filed (Defendants' Exhibit No. 1). On November 29, 1984, plaintiffs' attorney again wrote to defendants' counsel, instructing defendant Rodriguez not to enter the premises or else trespass charges would be filed against him, and informing that it was plaintiffs' intention to have a third party harvest the 1984 crop. (Defendants' Exhibit No. 6) Notwithstanding this announced position of plaintiffs, defendants sent employees to harvest the crop in the latter part of December, 1984, on advice of counsel to do so unless and until a court order dictated otherwise. No sooner did the harvesting begin than the cane harvester apparently bogged down, and defendants' employee set out on foot to deliver the news when somewhere along the waythis is disputed Mr. Theriot gave him a ride. The employee then informed Mr. Rodriguez that Mr. Theriot had told him to tell Mr. Rodriguez to retrieve the harvester and then stay off the property. Upon receiving this information, defendants made no further efforts to save the 1984 crop and it was never harvested. Defendants' reconventional demand was filed on May 22, 1985.
"There were obviously other efforts and attempts between the parties and their attorneys at negotiation and settlement of their differences over the period involved, but these are not in evidence and it is considered that they are not legally significant anyway."
The suit by Theriot, the main demand, was filed in March 1984 and sought damages from Rodriguez based on an alleged conversion of the 1983 sugarcane crop, together with the cost of correcting some alleged physical damage to the land itself. Rodriguez answered denying that Theriot was entitled to anything, and reconvened for damages based upon an alleged breach of the lease, the damages sought being the value of the sugarcane crops for 1984 and 1985.
At the conclusion of the trial the judge awarded plaintiffs (Theriot) $3,971.14, representing a calculation of what the court determined to be a fair rental for the year 1983. Rodriguez' reconventional demand was rejected. The court costs were assessed equally against the parties.
Rodriguez assigns as error the trial court's holding that plaintiffs are entitled to rental of their land for 1983, although they did not specifically pray for that relief (they prayed instead for the full value of the crop based on conversion). This assignment of error has no merit. La.C.C.P. Art. 862 provides:
"Except as provided in article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
We agree with the trial court that plaintiffs are entitled to some remuneration for the use of their land. The doctrine of quantum meruit provides a civil remedy where equity demands recovery, and neither tort nor contract provides a legal basis therefor. Fullerton v. Scarecrow Club, Inc., 440 So.2d 945 (La.App. 2nd Cir.1983).
*6 One using and benefiting from the use of another's property gives rise to recovery by the owner in quasi-contract or quantum meruit. Sterkx v. Bordelon, 142 So.2d 829 (La.App. 3rd Cir.1962). It is apparent from the record that Rodriguez used the Theriot property to grow sugarcane. It is equally clear that Rodriguez benefited pecuniarily from this use. Therefore, as owners, plaintiffs are entitled to some recovery.
Rodriguez also claims that the calculation of this recovery at the fractional interest of 1/5.5 was error. We disagree. The trial judge adequately explained his reasons for setting the rental at 1/5.5. He in effect split the difference between the parties' demands when they unsuccessfully tried to negotiate a lease. The trial court's resolution of the matter is one which would be hard to improve upon, given the circumstances of this case.
Rodriguez assigns as error the trial judge's denial of his reconventional claim for damages for the loss of the 1984 and 1985 crops. He argues that the lower court erred by holding that Theriot did not prevent him from harvesting the 1984 crop. From our analysis of the trial court's reasons for judgment regarding this issue, it appears that the court, making what was essentially a credibility determination, decided that the harvest was prevented, not by Theriot's threats, but by Rodriguez' own decision to forego the harvest after his cane harvester bogged down in the field. Leaving the cane standing in 1984, according to the trial judge, also effectively "tolled the death knell for the 1985 stubble". We can find no clear error in these factual determinations.
In their answer to this appeal, plaintiffs assign as error the failure of the trial court to award them the alleged costs of refurbishing their land caused by Rodriguez' construction of a special turnrow. This assignment of error is rejected. The trial judge concluded that by 1985 the continuing breakdown in relations between the parties, and Rodriguez' manifestly unwelcome presence on the land, left him no opportunity to put the land back in its former condition. We find no error in this factual ruling.
The plaintiffs finally allege that the lower court erred by assessing court costs one-half to them and one-half to defendants. This was not error. La.C.C.P. Art. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
"Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
It is readily apparent from this article that the trial judge is vested with broad discretion in the fixing of court costs. We cannot say that it was inequitable for the court to divide the costs. Although the judgment was granted in favor of plaintiffs, they did not prevail on all issues. The lower court denied their claim for conversion and also rejected their claim for damage to their property.
For the above reasons, the judgment of the trial court is affirmed in its entirety, the costs of this appeal to be divided equally between the parties.
AFFIRMED.