FILED
10/29/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2025 Session

## PHILIP J. BRYCE ET AL. V. NATHAN PARTIN ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 23CH4823      James W. Brooks, Jr., Chancellor**

_____

### No. E2024-01404-COA-R3-CV

_____

This case concerns a ground lease for real property upon which a business maintained a billboard. After the landowner sent a letter to the business purporting to terminate the lease, the business sought a declaratory judgment that the lease remained valid and requested damages. The landowner filed a counterclaim for a declaratory judgment that the lease was void or had been breached by the business. After a bench trial, the trial court determined that the lease had expired and awarded the landowner the rental income from the billboard minus the business's expenses. On appeal, the business asserts that the trial court erred by denying its equitable defenses and in its award of damages. We conclude that several of these defenses were waived in the trial court and that the business failed to prove the remaining defenses. However, we also conclude that the trial court erred in its award of the rental income and vacate this portion of the order. Because the record does not contain sufficient evidence for this Court to determine the proper distribution of the rental income, we remand the matter for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Vacated in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Raymond E. Lacy and Michael R. Franz, Knoxville, Tennessee, for the appellant, Debra Bryce.

Philip R. Crye, Jr., Clinton, Tennessee, for the appellee, Nathan Partin.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2023, Philip Bryce, Debra Bryce, and J&P Advertising (collectively, "Plaintiffs") filed a verified complaint in the Chancery Court for Anderson County against Nathan and Katherine Partin. The complaint alleged that Mr. and Mrs. Partin owned property in Anderson County on which Plaintiffs maintained a billboard and that Plaintiffs had previously leased a portion of the property from a prior owner. It further alleged that Mr. and Mrs. Partin interfered with Plaintiffs' rights under the lease by sending a letter in early 2023, purporting to terminate the lease and threatening to deny Plaintiffs access to the billboard. The complaint sought a declaratory judgment that the lease remained in effect and was enforceable, as well as damages and injunctive relief to prevent further interference.

By an agreed order entered in March 2023, the parties stipulated that neither would take any action regarding the billboard. In June 2023, Mr. and Mrs. Partin filed an answer in which they asserted a counterclaim for a declaratory judgment that the leases were either void or had been materially breached by Plaintiffs. Plaintiffs answered the counterclaim and asserted defenses. Mrs. Partin transferred all of her interest in the property to Mr. Partin and was dismissed from the action. In February 2024, the parties agreed to modify the agreed order to allow Plaintiffs to enter into a billboard advertising agreement with a third party and to pay all rent proceeds to the court. Plaintiffs then paid the rent proceeds into the court.

A bench trial was held on May 2, 2024. A large portion of the trial was spent recounting the lengthy ownership history of the land, the billboard, the leases, and the advertising permits for each sign face.[1] Testimony was given by a prior owner of the property, James Yarber; one of the brothers who first built the billboard, John Rankin; Mrs. Byrce; and Mr. Partin. Exhibits introduced included the relevant leases and the chain of title for the property.

After the close of proof, the trial court orally ruled in favor of Mr. Partin and later entered a written order on July 22, 2024, including the following factual findings: In 1981, John Rankin acquired a piece of property in Anderson County, Tennessee, for the purposes of constructing and operating a billboard. In June 1983, John[2] entered into a "Billboard Ground Lease" ("the first lease") with his brother and business partner, Robert Rankin,

---

[1] The billboard has two sides upon which advertising is displayed, which the parties and the trial court referred to as "reads." As used by the parties and the court, the "southbound read" of the billboard faces north and was visible to motorists traveling south on Interstate 75. Accordingly, the "northbound read" faces south and was visible to motorists traveling north. We adopt the parties' terms.

[2] Because John and Robert Rankin share a surname, we will refer to them by their first names for clarity.

granting Robert access to the property to construct and maintain a billboard for a term of fifty years. John also conveyed the billboard structure to Robert. In December 1983, John and Robert entered into a second lease, titled "Commercial Billboard Ground Lease Agreement" ("the second lease"). As detailed below, the second lease provided for a different term length and rent amount. In 1993, Robert assigned his interest in the billboard to Mr. Bryce and Jack Satterwhite. The assigned interest included Robert's interest in the billboard structure and the lease rights for the southbound read of the billboard. Through various assignments, these interests were held by Plaintiffs at the time of the trial.[3]

The trial court also found that the real property had been conveyed numerous times. Although John conveyed the property to another individual, the relevant conveyances began when Josephine Yarber acquired the property in 1991. Ms. Yarber built a house on the property and lived there until her passing in 2001. Upon her death, an 80% ownership interest in the property was devised to her son, Mr. Yarber, who conveyed the property to Mr. Partin in 2022; Mr. Partin continued to own the property at the trial.

The trial court then considered whether the first or second lease governed. The two leases concerned the same subject matter and were between the same parties; however, they provided inconsistent terms in numerous respects. The court determined that, where there were inconsistencies, the second lease would govern because "the terms of [the first lease] merged into [the second lease]." One of the most important inconsistencies between the leases was the term length. On this, the court found thusly:

> The leases are inconsistent as to the length of the lease term. [The first lease] provides for a 50-year term, while [the second lease] provides for a 25-year term, with an option to extend it for a second 25-year term. Because the leases are inconsistent as to the length of the lease term, [the second lease] controls, and it provides that the initial lease term of 25 years would expire on December 1, 2008, unless renewed for a subsequent 25-year term. [The second lease] further provides that in order to extend the term "Lessee must notify Lessor in writing within 90 days before the end of this lease as to whether he will exercise his option or not."
>
> There was no proof [that] the [second] lease was extended by providing written notice of the extension within 90 days of December 1, 2008, to either James Douglas Yarber, who owned an 80% interest in the Partin property in 2008, or to any other owner of the Partin property in 2008. As a result, the term of the [second] lease expired on December 1, 2008, and

---

[3] Robert Rankin previously subleased the northbound read of the billboard. At the trial, Brad Johnson, the Estate of Carl Johnson, and the Estate of Wilford Johnson, who were originally parties to the proceedings, asserted that they continued to have rights under this sublease. All of their claims were nonsuited at the trial, except to the extent that they maintained an interest in the northbound read of the billboard and the accompanying permit.

since that time the Plaintiffs' use and possession of the southbound read face of the billboard structure has been as holdover tenants.

The court also found that Plaintiffs had not paid rent after the expiration of the lease but concluded that, even if the property owners had waived strict compliance with the lease's rent payment terms, there was no evidence that the lease had been properly extended. Therefore, the court concluded that the lease had expired. However, the court also concluded that the southbound read face[4] was the personal property of Plaintiffs and that they had the right to remove it from the structure. The trial court also concluded that the rental proceeds deposited with the court should be paid to Mr. Partin minus the costs incurred to produce and install the advertisement on the billboard.

After the entry of this order, Plaintiffs filed a motion to alter or amend the judgment, asserting that the trial court erred by awarding the rental income to Mr. Partin. Specifically, Plaintiffs asserted that the judgment should be amended to award 75% of the rental income to them based upon evidence that this is the typical allotment of income between owners of a billboard and owners of an underlying property. Alternatively, Plaintiffs requested that the judgment be amended to include various other expenses, thereby increasing the award to Plaintiffs. Plaintiffs also provided notice of an evidentiary hearing. In response, Mr. Partin asserted that new evidence should not be allowed to be introduced because Plaintiffs had this evidence in their possession at the time of the hearing, and that allowing new evidence would be an abuse of discretion.

A hearing on the motion was held on August 14, 2024. At the start of the hearing, the parties offered competing arguments regarding whether the trial court could hear additional testimony during a hearing on a motion to alter or amend a judgment. Ultimately, the trial court ruled that it could hear additional evidence "to prevent manifest injustice," reasoning that, should Mr. Partin be allowed to receive all of the rental income, this would be a manifest injustice to Plaintiffs. Therefore, the court allowed the evidentiary hearing to continue. Gary Douglas testified that, in his experience, the average percentage of the billboard's rental income paid to a landowner ranged from 12% to 25% of the gross proceeds from the billboard rental. Mr. Douglas based the 12% figure on his experience working for a large billboard company in the 1980s, which required all of the lease agreements under his supervision to average out to this percentage. However, Mr. Douglas stated that it was acceptable for leases to provide for a lower or higher percentage. When asked whether he knew if the company continued to use this percentage, Mr. Douglas testified that he did not. Mr. Douglas based the upper 25% limit on his experience working independently, which he stated gave him more room to negotiate. Mrs. Bryce testified next regarding the utility cost of the billboard. Lastly, Mr. Partin testified.

---

[4] The "face" of the billboard is the physical structure on an outdoor unit where advertising copy is displayed.

At the close of proof, the trial court orally ruled that allowing Mr. Partin to get the amount of rental income ordered originally would be a manifest injustice to Plaintiffs. The court then modified its order to award Plaintiffs $4,500 as compensation for the use of the sign face and permit, $1,310.65 as the cost of creating the advertisement, and $1,200 in utility costs. Therefore, the court modified the order to award Plaintiffs $7,010.65, with the remaining $10,989.35 awarded to Mr. Partin.

A written order modifying the final order was entered on August 23, 2024. Plaintiffs timely appealed and present the following issues for our review:

> (1) Whether the trial court erred in finding that the December 1, 1983 lease expired on December 1, 2008, implicitly rejecting Plaintiffs' defenses based on estoppel, laches, and waiver.
> (2) Whether the trial court erred by not dismissing Mr. Partin's claims against Plaintiffs based on [the] expiration of the applicable statute of limitations.
> (3) Whether the trial court erred in its order disbursing the advertising proceeds paid into court during the pendency of the litigation.

Mr. Partin presents the additional issue of whether the Chancellor erred in reopening the record at the Rule 59.04, Tenn. R. Civ. P., hearing to allow Mrs. Bryce to introduce additional evidence and to litigate new claims that were not previously asserted.

STANDARD OF REVIEW

In an appeal from a bench trial, we review a trial court's factual findings de novo on the record with a presumption of correctness, unless the preponderance of the evidence indicates otherwise. TENN. R. APP. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). Appellate courts should afford "considerable deference" to factual findings by a trial court based on witness credibility and will not reverse a trial court's "credibility-based factual findings" unless there is clear and convincing evidence otherwise. *Easley v. City of Memphis*, 699 S.W.3d 268, 270 (Tenn. 2024). We review the trial court's determinations on questions of law de novo with no presumption of correctness. *Tenn. Homes v. Welch*, 664 S.W.3d 1, 8 (Tenn. Ct. App. 2022).

ANALYSIS

I.      Waiver or forfeiture of issues on appeal

The first two issues presented by Plaintiffs are that, with respect to the counterclaim asserted by Mr. Partin, the trial court erred by "implicitly" rejecting the equitable defenses of estoppel, laches, and waiver asserted by Plaintiffs (in the role of counter-defendants) and that the applicable statute of limitations bars Mr. Partin's claims. In response, Mr.

Partin asserts that these claims were not adequately presented to the trial court or that the evidence in the record does not support their application. For the following reasons, we agree that Plaintiffs have waived the defense of laches and forfeited their statute of limitations defense.[5]

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). The burden of proving that the issues sought to be precluded were not raised in the trial court falls on the party asserting waiver. *Id.* Therefore, Mr. Partin bears the burden of proving that Plaintiffs did not raise these defenses before the trial court. When evaluating whether an issue has been waived, appellate courts should not "exalt form over substance" and should undertake a careful review of the record to determine whether a party is raising an issue for the first time on appeal. *Id.*

The parties in the present case largely agree on the facts presented to the trial court regarding these defenses. They do not dispute that the defenses of estoppel, laches, and waiver were listed as affirmative defenses by Plaintiffs in their answer to Mr. Partin's counterclaim. The parties similarly agree that the defenses were then largely unaddressed by Plaintiffs' counsel at the trial. The parties disagree on whether the minimal presentation of these defenses is sufficient to preserve the issue on appeal.

Beginning with the defense of laches, we conclude that this defense has been waived. In support of their argument that this defense was litigated in the trial court, Plaintiffs assert that the evidence presented could be interpreted as a laches defense "despite not using the word 'laches' specifically." Laches is an affirmative defense that must be specifically pleaded to be considered. TENN. R. CIV. P. 8.03. Laches was not specifically pleaded in Plaintiffs' answer, although the parties agree it was included in the answer. Nevertheless, Plaintiffs assert that finding this defense to be waived would "exalt form over substance" because of a case stating that, "[t]he fact that the party phrased the question or issue in the trial court in a different way than it does on appeal does not amount to a waiver of the issue." *Powell*, 312 S.W.3d at 511. However, this is not an instance where Plaintiffs referred to the defense by one name in the trial court and are now rephrasing it

---

[5] Although the parties use the term "waiver" as to all of their claims, our Supreme Court has recently highlighted a distinction between the terms "waiver" and "forfeiture." As stated by our Supreme Court:

> Courts often use the words waiver and forfeiture interchangeably. *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). However, there is a distinction. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

*Houghton v. Malibu Boats, LLC*, --- S.W.3d ---, 2025 WL 2971436, at *6 n.13 (Tenn. 2025). Based upon the differences in how the claims were presented to the trial court, we believe Plaintiffs have waived their laches defense and forfeited their statute of limitations defense.

on appeal. Instead, Plaintiffs are asserting that the trial court should have gleaned that they were litigating this defense because of an amalgamation of the evidence that was presented but not pleaded or even minimally argued. "'Judges are not like pigs, hunting for truffles buried in'" the evidence. *Flowers v. Bd. of Pro. Resp.*, 314 S.W.3d 882, 899 n. 35 (Tenn. 2010) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). The onus was on Plaintiffs to specifically plead and fully present their defense, which they failed to do. Plaintiffs' pleadings and conduct at trial were not sufficient to put Mr. Partin or the trial court on notice that Plaintiffs were litigating this defense. Therefore, the defense of laches was waived.

Next, we conclude that Plaintiffs' statute of limitations defense has been forfeited.[6] Plaintiffs' argument regarding this defense essentially tracks their argument regarding laches, i.e., that although this defense was not presented by name, evidence before the trial court amounted to this defense. This defense was not included in Plaintiffs' answer. "A statute of limitations defense must be specifically pled or generally it will be considered [forfeited]." *Tip's Package Store, Inc. v. Com. Ins. Managers, Inc.*, 86 S.W.3d 543, 553 (Tenn. Ct. App. 2001) (citing TENN. R. CIV. P. 8.03). This affirmative defense was never included in any pleading in the trial court. Therefore, this defense, and Plaintiffs' second issue on appeal, have been forfeited.

Turning next to the defense of estoppel, we find that the issue was raised by Plaintiffs in their answer and argued by Plaintiffs' counsel at trial. "In other contexts, we have held that waiver does not occur if the opposing party is given fair notice of an argument and an opportunity to rebut it." *Tenn. Dep't of Safety and Homeland Sec. v. Shell*, No. M2021-00108-COA-R3-CV, 2022 WL 1410643, at *3 (Tenn. Ct. App. May 4, 2022). In his closing argument, Plaintiffs' counsel stated, "I think Mr. Partin and his predecessor[s in] interest[ ] ought to be estop[ped] from asserting that there was an issue with renewal of the lease or receipt of payments." We conclude that this defense was not waived.

Finally, although Plaintiffs assert that the defense of waiver was "implicitly" denied, the trial court did, at least minimally, rule on this issue. In the final order, the trial court stated:

> In addition, there was no proof that the minimal rent payments due under the lease were paid, but even if it is assumed for argument['s sake] that the Yarber[s] waived strict compliance with the terms of the lease, then, nevertheless, there was no proof that the Plaintiffs took any action to extend the lease.

---

[6] Because Plaintiffs failed to plead this defense entirely, they have failed "to make the timely assertion of a right," such that they have forfeited it, rather than waived it. *See Houghton*, 2025 WL 2971436, at *6 n. 13.

While not entirely clear, we interpret this passage as the trial court finding that, even if the rent requirement was waived, Plaintiffs failed to extend the lease. Therefore, the trial court addressed Plaintiffs' waiver defense, and the defense was not waived. We turn now to the merits of the preserved issues.

II.     Plaintiffs' affirmative defenses to the counterclaim

a.  Equitable estoppel

We turn next to whether the trial court erred by not finding Mr. Partin to be equitably estopped from asserting his counterclaims against Plaintiffs.

As noted above, the trial court's order did not address Plaintiffs' estoppel defense. Although Plaintiffs assert that the trial court "implicitly" rejected their defense, we believe the order is better understood as failing to make adequate findings of fact and conclusions of law under Tenn. R. Civ. P. 52.01.[7] In instances where the trial court fails to comply with this rule, appellate courts generally face two options for the appropriate next step. One option is to remand the matter to the trial court with directions to issue sufficient findings of fact and conclusions of law. *Lovlace*, 418 S.W.3d at 36. The second option, often referred to as the "soldiering on" path, involves conducting a de novo review of the record to determine where the preponderance of the evidence lies. *Id*; *see also Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (referring to this option as "soldiering on").

Determining which option is appropriate comes down to several considerations. An appellate court may choose to soldier on when the trial court's decision is "readily ascertainable" or "involves only a clear legal issue." *Bailey v. Bailey*, No. M2022-01467-COA-R3-CV, 2025 WL 1517411, at *12 (Tenn. Ct. App. May 28, 2025) (collecting cases). Remand is the appropriate remedy in instances where a complicated factual predicate exists or witness credibility findings are needed to make a decision. *Id.* This case falls into the former category. It is implicit in the trial court's decision that it did not credit Plaintiffs' estoppel defense, as it ruled in favor of Mr. Partin. We also do not find this to be a case with a complicated factual predicate regarding the application of estoppel. Therefore, we will soldier on and conduct our own review of the record and Plaintiffs' estoppel defense.

---

[7] This rule provides in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

TENN. R. CIV. P. 52.01

As a general matter, "'[e]stoppels are not favored in the law.'" *Kershaw v. Levy*, 583 S.W.3d 544, 548 (Tenn. 2019) (quoting *Sturkie v. Bottoms*, 310 S.W.2d 451, 453 (Tenn. 1958)). Equitable estoppel "'focuses on the relationship between the parties.'" *Id.* (quoting 31 C.J.S. *Estoppel and Waiver* § 189 (June 2019 Update)). Equitable estoppel is founded on the principles of justice and good conscience. *Baliles v. Cities Servs. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979) (quoting *Evans v. Belmont Land Co.*, 21 S.W. 670, 673-74 (Tenn. 1893)). In essence, the purpose behind equitable estoppel is "'to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by an estoppel.'" *In re Est. of Baker v. King*, 207 S.W.3d 254, 264 (Tenn. Ct. App. 2006) (quoting *Baliles*, 578 S.W.2d at 624).

Our Supreme Court has previously laid out the following elements of a claim for equitable estoppel:

> The party asserting equitable estoppel must establish that the other party (1) engaged in conduct amounting to false representations or concealment of material facts, (2) intended or expected that the party asserting equitable estoppel would rely on that conduct, and (3) had actual or constructive knowledge of the real facts. *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004). The party asserting estoppel also must prove that it (1) lacked knowledge of the real facts, (2) relied on the other party's conduct, and (3) was prejudiced. *Id.*

*Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 621 (Tenn. 2023); *see also Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315-16 (Tenn. 2009).

Plaintiffs' argument here ignores the requirements set forth by our Supreme Court and instead presents an oversimplification of the elements of equitable estoppel by omitting the requirements that the conduct amounts to false representations or concealment of material facts and that the other party intended the party asserting estoppel would rely on that conduct. Specifically, Plaintiffs assert that all that is required is for a party to show "reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting." While we acknowledge that this formulation of the elements of estoppel comes from caselaw, we note that it follows a detailed recitation of the requirements of equitable estoppel and does not provide a comprehensive description. *See Werne v. Sanderson*, 954 S.W.2d 742, 746 (Tenn. Ct. App. 1997). Under the more complete formulation recently given by our Supreme Court, Plaintiffs' argument fails.

Plaintiffs' argument for why Mr. Partin should be estopped from asserting that the lease expired is essentially that the passage of time during which Mr. Yarber did not inform

Plaintiffs of his mother's death prevented Plaintiffs from bringing the present action earlier and that the court should, therefore, estop Mr. Partin from asserting his counterclaims. Plaintiffs argue that "The billboard was in plain view on the Property, and James Yarber knew there was a lease for the billboard when his mother owned the Property." Plaintiffs assert that Mr. Partin should be estopped from asserting his counterclaims because, "[r]ather than reach out to Plaintiffs about Josephine Yarber's death and about payment of rent to himself and the other co-owners, James Yarber made a conscious decision to do nothing." According to Plaintiffs, "[u]nder these circumstances, Plaintiffs reasonably relied upon the actions of Mr. Yarber, Mr. Partin's predecessor in title, when they continued operating the billboard," and "during that period of time, evidence as to whether the Second Lease was renewed in 2008 was lost through the passage of time, due to the death of Robert Rankin." For the reasons discussed below, we find this argument unavailing.

At the outset, we note that Plaintiffs only assert that Mr. Partin is estopped based upon the actions of Mr. Yarber and do not assert Mr. Partin's action would support a finding of estoppel. "When parties would be estopped, their heirs and privies in estate are also estopped." *Farley v. Ellis*, No. W2000-00354-COA-R3-CV, 2000 WL 1876431, at *8 (Tenn. Ct. App. Dec. 27, 2000) (citing *LaRue v. Greene Cnty. Bank*, 166 S.W.2d 1044, 1052 (Tenn. 1942); *Heiskell v. Cobb*, Tenn. 638 (Tenn. 1872)). Because Mr. Partin purchased the property from Mr. Yarber, they are considered to be "privies in estate." *See, e.g.*, *Nelson v. Trigg*, 72 Tenn. 701, 705 (Tenn. 1880) ("The relation of privies may be created by . . . voluntary or involuntary transfers from one person to another, and denotes mutual or successive relationship to the same rights of property"). Thus, we will examine whether Mr. Yarber's actions satisfy the elements of estoppel.

Plaintiffs do not assert that Mr. Yarber engaged in conduct amounting to concealment or misrepresentation of Ms. Yarber's death. Instead, Plaintiffs only assert inaction by Mr. Yarber. That Mr. Yarber did not actively seek out Plaintiffs to inform them of his mother's death does not amount to concealment or misrepresentation. Nor do Plaintiffs assert that Mr. Yarber intended or expected Plaintiffs to rely on any supposed concealment or misrepresentation of Ms. Yarber's death. Further, even if Mr. Yarber's inaction regarding the passing of his mother did amount to concealment or misrepresentation, he would still not have concealed material facts sufficient to prevent Plaintiffs from asserting their claim under the lease. The mere fact that Mr. Yarber did not reach out to Plaintiffs to inform them of his mother's death did nothing to conceal material facts regarding the validity of the lease or its expiration, facts that were ascertainable by Plaintiffs. We are similarly unpersuaded by Plaintiffs' argument that they were deprived of information concerning to whom to send the renewal. The identity of the current property owner was readily ascertainable by Plaintiffs. Therefore, we conclude that Plaintiffs' estoppel argument fails.

b. Waiver

Plaintiffs' sole remaining affirmative defense to the counterclaim is waiver of strict compliance with the renewal terms. The trial court considered whether a waiver had occurred and concluded that, even if strict compliance with the terms governing rent payments had been waived, no evidence of renewal was presented. On appeal, Plaintiffs assert that Mr. Partin and his predecessors in title waived the renewal provision, resulting in an extension of the lease until 2033. We respectfully disagree.

"'[P]arties are free to negotiate any number of . . . arrangements for renewal options by including specific and pertinent language in the lease agreement.'" *Jones v. VCPHSC I, LLC*, No. W2016-02142-COA-R3-CV, 2018 WL 575349, at *3 (Tenn. Ct. App. Jan. 26, 2018) (quoting *Norton v. McCaskill*, 12 S.W.3d 789, 794 (Tenn. 2000)). In this case, the second lease provided the following terms for the term of the lease and its renewal:

> The term of this lease shall be for (25) twenty-five consecutive years, commencing on December 1, 1983, at the rental sum of Ten Dollars ($10.00) per year, being due and payable on December 1st of each year during the term of this Agreement. In addition, Lessee has option to renew this lease for a second twenty-five year period for the rental sum of Twenty Dollars ($20.00) per year, being due and payable on December 1st of each year during the term of this Agreement. Lessee must notify Lessor in writing within 90 days before the end of this lease as to whether he will exercise his option or not.

On appeal, Plaintiffs concede that there is no evidence in the record that this renewal option was exercised and, therefore, do not challenge the trial court's finding that the lease expired in 2008. Plaintiffs instead assert that Mr. Yarber waived strict compliance with the renewal provision, thus creating a holdover tenancy binding Mr. Partin for the remaining lease term until 2033.

Waiver is considered "'an excuse for nonperformance of contractual duties or conditions . . . based in large part on the policies against forfeiture and unjust enrichment.'" *GuestHouse Int'l., LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 201 (Tenn. Ct. App. 2009) (quoting 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39:15 (4th ed. 2009)). Indeed, the defense of waiver is designed to prevent the party waiving compliance from "'lulling another'" into the belief that strict compliance will not be required and then suing the other party for that very noncompliance. *Id.* As is the case here, "waiver is defensive in nature," meaning that it is raised as a defense to a breach of contract claim. *Id.* at 202. "The law will not presume a waiver, and the party claiming the waiver has the burden of proving it by a preponderance of the evidence." *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998). Whether a party has waived a contractual provision is a

question of fact. *Gaston v. Tenn. Farmers Mut. Ins. Co.,* 120 S.W.3d 815, 819 (Tenn. 2003).

Waiver must be "proven by a clear, unequivocal and decisive act of the party, showing a purpose to forgo the right or benefit which is waived." *E & A Ne. Ltd. P'ship v. Music City Rec. Distribs. Inc.*, No. M2005-01207-COA-R3-CV, 2007 WL 858779, at \*7 (Tenn. Ct. App. Mar. 21, 2007). "Waiver 'may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct.'" *GuestHouse*, 330 S.W.3d at 202 (quoting *Chattem Inc. v. Provident Life & Accident Ins. Co.*, 676 S.W.2d 953, 955 (Tenn. 1984)). Indeed, "[m]ere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights when there is no duty to speak or act." 13 WILLISTON ON CONTRACTS § 39:35. "Similarly, forbearance to assert or insist on a right does not, by itself, constitute a waiver." *Id.*

In the context of a lease provision regarding renewal, "a landlord may waive notice, [but] our courts generally require evidence of an express waiver or acceptance of rent payments as specified in the renewal provision and other action consistent with the exercise of the renewal option." *Jones*, 2018 WL 575349, at \*3. In the present case, neither of these conditions is present. Plaintiffs do not assert that Mr. Yarber provided an express waiver of the renewal provision. Plaintiffs also concede that there is no evidence in the record that they paid rent after December 1, 2008. The evidence in the record supports a finding that the billboard largely remained untouched during Mr. Yarber's ownership of the property. In essence, it appears the lease expired, and Mr. Yarber did not exercise his right to remove Plaintiffs from the property. Mr. Yarber did not act in a manner that showed an intent to waive the renewal requirements of the contract. Instead, it appears he did not exercise his right to remove the billboard from his property.[8]

Plaintiffs also attempt to circumvent the requirements for a holdover tenancy by asserting that the rent payments were "nominal." We find the case cited by Plaintiffs to be inapposite because it discusses nominal consideration for a deed of sale, not rental payments. *See Jordan v. Black*, 19 Tenn. 142 (Tenn. 1838). We, therefore, decline to find in the first instance that the rent was nominal. However, even assuming for argument's sake that the rent could be considered nominal, we do not believe this was sufficient to alter the requirement of rental payments for creating a holdover tenancy. In the case that Plaintiffs cite, the court upheld nominal consideration as adequate for a deed of sale,

---

[8] Indeed, the facts of the present case line up quite well with the definition of unlawful detainer. *See, e.g.*, *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) ("Unlawful detainer occurs when the tenant enters by contract, either as 'tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant, and, in either case, willfully and without force, holds over possession from the landlord, or the assignee of the remainder or reversion.'" (quoting Tenn. Code Ann. § 29-18-104)).

thereby upholding the contract. It does not stand to reason that this case supports the proposition that nominal rent is immaterial to the contract, such that failure to pay rent does not matter for the purpose of creating a holdover tenancy. *Cf. Est. of Brown*, 402 S.W.3d 193, 200 (Tenn. 2013) (stating that "any consideration, however small, will support a promise"). Notably, the acceptance of rent payments by the landlord is an example of an affirmative act from which waiver may be inferred. *See, e.g.*, 49 AM. JUR. 2D *Landlord and Tenant* § 176 (stating that "there must be acceptance of rent, not merely receipt of the rent, by the landlord in order for the rent payments to act as a waiver.") In this case, there were no rent payments and, therefore, no affirmative act to show acquiescence by the landlord.

The second lease is quite clear regarding how Plaintiffs were to renew the lease, and Plaintiffs failed to comply with its terms or to show a waiver. Our decision comports with general principles regarding waiver. Indeed, "a waiver of a material part of the agreed exchange is ineffective. Only an immaterial part of the agreed exchange may be waived." *GuestHouse*, 330 S.W.3d at 202 (citation modified). Similarly, the doctrine of waiver primarily applies to conditions that are procedural or technical in nature. *Id.* at 201. Here, Plaintiffs are not asserting that a technical or procedural condition of the contract was immaterial such that an implied waiver is appropriate. Instead, Plaintiffs are asserting that "the very object of the" lease was immaterial, i.e., the rent due under the contract.[9] *See id* at 203; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 84 cmt. d (1981). We decline to create an exception for instances when rent is "nominal."

In the present case, we cannot conclude that Mr. Yarber acted in a manner that resulted in a waiver of the renewal provision or implicitly created a holdover tenancy.[10]

---

[9] We note that this discussion is limited to our finding that Plaintiffs' failure to pay rent was material for the purpose of creating a holdover tenancy and should not be imported into the context of whether Plaintiffs breached the lease by failing to pay rent prior to the lease's expiration. We take no position on whether Mr. Yarber waived strict compliance with the rent provision prior to 2008.

[10] We also reject Plaintiffs' assertion that the creation of a holdover tenancy would extend the lease to 2033. "In the absence of a contrary provision in the original lease, the holdover tenant is bound for another like term. '[I]f the original tenancy was for a year or more, the new or hold over tenancy is from year to year[.]'" *Jones*, 2018 WL 575349, at *4 (citation and footnote omitted). A periodic tenancy continues until one party gives notice to the other of its intent to terminate the tenancy. *Id.* at *5. "Notice to terminate a year-to-year tenancy 'must be given six months before the end of the year.'" *Id.* Therefore, even under Plaintiffs' theory that a holdover tenancy was created, Mr. Partin would not be bound under the lease until 2033.

III.     The trial court's allocation of rental income

The remaining issues pertain to the trial court's decisions to hold an evidentiary hearing, grant Plaintiffs' motion to alter or amend the judgment, and reallocate the rental income.[11]

As stated above, the trial court initially entered an injunction preventing either party from taking any action with respect to the billboard. However, the parties subsequently submitted an agreed order to modify the injunction to allow Plaintiffs to enter into an advertising agreement with a third party, which the trial court then entered. After this, Plaintiffs entered into an advertising agreement, which provided for a one-year rental term with $1,500 due per month as rent, meaning that the total value of the contract was $18,000. These payments were to be paid to the court and then would be distributed based on the result of the trial. In the court's final order, the court concluded that "[t]he funds currently being paid into the Court pursuant to the rental of the southbound read face are the property of the Defendant, Nathan Partin, but prior to any distribution to him, the Plaintiffs should be reimbursed $1,310.65 as their reasonable costs incurred to produce and install the sign."

However, after this, Plaintiffs filed a motion to alter or amend the judgment, asserting that the judgment should be modified to "reflect [the] reasonable and just compensation to Plaintiff and Partin out of the rental funds." After a hearing on the motion, the court entered an order modifying the judgment, stating:

> In order to prevent manifest injustice, the Court exercises its discretion and finds that the Judgment should be altered to allow the Plaintiffs to be reimbursed their production expenses of $1,310.65, utility expenses of $100 per month, and $4,500, for the use of their sign face and permit. Paragraphs 3 and 4 of the Judgment therefore should be altered to provide that Plaintiffs should receive from the rental income produced by the current lease their production expenses of $1,310.65, electric utility expenses of $100 per month (or a total utility expense not to exceed $1,200), and an additional $375 per month (or a total not to exceed $4,500) for use of the Plaintiff's sign face and permit.

---

[11] Mr. Partin asserts that the trial court erred by allowing the evidentiary hearing because Plaintiffs failed to satisfy the requirements for the court to hear new evidence on a motion to alter or amend. However, as will be explained, we have determined that the court's distribution of the rental income, both in the original final order and in the amended judgment, rests on an error necessitating that the order be vacated. Further, our determination is independent of the evidence introduced at the evidentiary hearing, which we find to be insufficient for the trial court or this Court to properly distribute the rental income. This issue is, therefore, pretermitted, and we decline to address Mr. Partin's arguments regarding the trial court allowing an evidentiary hearing or amending the judgment.

Therefore, after finding that the lease had expired, the trial court determined that all of the rental income (from the rental of the billboard to a third party) was the property of Mr. Partin, subject to Plaintiffs' expenses. We find this calculation of the damages to be in error and to necessitate that the portion of the order distributing the rental income be vacated.

We are guided in this case by our Supreme Court's decision in *AHCI, Inc. v. Lamar Advertising of Tennessee, Inc.*, 898 S.W.2d 191 (Tenn. 1995). *Lamar* concerned two ground leases entered into for the purpose of maintaining billboards. 898 S.W.2d at 192. After the expiration of the leases, Lamar continued to pay the original rent to the lessors as holdover tenants. *Id.* The properties were subsequently sold, and the new owners demanded increased rent, a demand Lamar refused. *Id.* The parties attempted to negotiate; however, no agreement was reached, and Lamar failed to pay any rent while continuing to maintain billboards on the properties. *Id.* The plaintiffs then filed suit for unpaid rent, asserting that Lamar owed the increased rates demanded because they continued to operate the billboard after the holdover period expired. *Id.* The plaintiffs also demanded that Lamar remove the billboards, and Lamar complied. *Id.*

Our Supreme Court first determined that Lamar could not be bound to the higher rent term, an issue not relevant to the present case. *Id.* at 194-95. However, after concluding that Lamar could not be bound to the higher rent term, the Supreme Court concluded:

> Having so held, and given the fact that the leases were not extended beyond the holdover periods, the parties had no lease agreements after November 1987 (with respect to the AHCI property) and March 1988 (with respect to the Jacadeda property). In the absence of such agreements, Lamar may, in accordance with the traditional equitable doctrines of quantum meruit or unjust enrichment, *see Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150 (1966), only be held liable for the fair market rental value for the period in which it occupied the premises. *See Revlon Group Inc. v. LJS Realty, Inc.,* 579 So.2d 365 (Fla. App. 1991) (although no valid lease agreement existed between assignor and assignee, assignee was required to pay assignor fair rental value for its occupation of premises); *Theriot v. P & R Farms Inc.,* 527 So.2d 3 (La. App. 1988) (in the absence of an express lease agreement, owner may recover fair rental value under theory of quantum meruit).

*Id.* at 195. The Court continued to hold that, "Where there is no agreement between the parties, the tenant becomes liable for the fair market rental value for the period that it occupies the premises beyond the term of the lease." *Id.* at 196. This reasoning applies in the present matter.

- 15 -

We have already concluded that the trial court did not err by finding that the lease expired and that no holdover tenancy was created. Therefore, the parties are essentially in the same orientation as the parties were in *Lamar* before the billboards were removed from the property: a lessee and a lessor without a valid lease agreement between them. Therefore, as in *Lamar*, Mr. Partin did not have a claim to the full advertising rental payments from the advertising agreement and was, instead, limited to an equitable claim for the fair market rental value of the occupied property for the period in which Plaintiffs occupied the premises without a valid lease agreement. The trial court's orders treat the rental income as Mr. Partin's property, when the income was Plaintiffs', subject to an equitable claim for the fair market rental value of the occupied property. Therefore, the orders are predicated on an error and that portion of the order must be vacated.

Unfortunately, Mr. Douglas's testimony concerned the range of percentages of gross sales that billboard businesses typically paid in rent to the property owner. Additionally, some of Mr. Douglas's testimony regarding these percentages stemmed from his experience in the 1980s, and he stated he did not know if this was still accurate. Mr. Douglas's testimony also indicated that, while 12% was an average, other percentages were acceptable. While the court acknowledged the 25% figure, it did not make a finding adopting or rejecting this percentage. Without findings by the trial court, this Court cannot make this determination. Therefore, the matter is remanded to the trial court for a determination of the fair market rental value of the property to be paid to Mr. Partin, and for any further proceedings consistent with this opinion. The trial court is affirmed in all other respects.

CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded. Costs of this appeal are assessed equally against the appellant, Debra Bryce, and the appellee, Nathan Partin, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE